On May 26, 1947 at about 7 a.m. plaintiff was driving his 1942 Chevrolet Fleetline two door sedan in a northerly direction on Highway 78 which parallels Bayou Lafourche, going in the direction of Larose, Louisiana, and the defendant was driving a truck and trailer approaching plaintiff from the opposite direction and, therefore, traveling in a southerly direction on said highway. When the car and the truck were passing they sideswiped or came in contact and, as a result, the plaintiff suffered a severe and permanent injury to his left arm.
Plaintiff alleged that on the morning in question while driving on Highway No. 78 he observed a truck and trailer approaching him from the opposite direction and that said truck and trailer at that time was on its right hand side of the highway; that the truck tractor and plaintiff's car passed each other without difficulty, but that the trailer portion of the unit swung to its left over the center of the highway and towards plaintiff's car, and that as a result of the trailer swinging or crossing over the center of the highway into plaintiff's lane of traffic the rear end of the trailer struck plaintiff's car just to the front of the left door and scraped the left side of his car from that point to its rear end; that the trailer swung so quickly and suddenly that plaintiff was unable to avoid the collision.
Plaintiff alleged that as a result of the accident he sustained extreme compound, comminuted fractures of the left arm and forearm in the elbow joint and, in addition, a fracture of the humerus, both bones of the forearm were fractured and many bones in plaintiff's left hand. The plaintiff itemized his damages which totalled $84,898.68 for which sum he prayed.
Plaintiff has also joined the insurer of the defendant Roy Dupuy which was the Lumbermen's Mutual Casualty Company. The General Insurance Corporation, which company was the insurer of the plaintiff, had paid the plaintiff the sum of $293.85, *Page 674 
the amount of damage caused to plaintiff's car in the collision, and the sum of $250 for medical expenses and had obtained from plaintiff a written subrogation and, accordingly, has intervened in this suit and prays for a judgment for these amounts should plaintiff recover. Plaintiff admitted the allegations of the petition of intervention.
The defendants filed a general denial to the petition of intervention and also a general denial to plaintiff's petition and further alleged that plaintiff's car was being operated on its wrong side of the road and, as a result, plaintiff struck the truck and trailer.
The case was duly tried and the judge of the district court, in a well-reasoned oral opinion which was taken by the court stenographer and is in the record, found that both were equally negligent, that is, that the accident was caused by the combined negligence of both plaintiff and defendant, and consequently rendered judgment in favor of the defendant dismissing plaintiff's suit at his cost.
Plaintiff and intervenor have appealed from the judgment of the District Court.
Plaintiff's main contention before this Court, although not specifically set forth in his petition, is based upon the Highway Regulatory Act 286 of 1938, § 3 Rule 7, Title 2, Paragraphs (c) and (d), which are as follows:
"(c) The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle travelling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.
"(d) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction, approaching the crest of a hill or substantial grade, or upon a curve in the highway or elsewhere, where the view of the driver doing the overtaking or passing is obstructed within a distance of five hundred (500) feet."
Just prior to the accident it is established by the testimony that there was a truck driven by the witness Cheramie, referred to as the Esso truck, proceeding in a southerly direction on Highway 78, which highway is rather winding as it follows the course of Bayou Lafourche. Immediately behind the Esso truck was the truck of the defendant, being operated by the defendant Roy Dupuy, and referred to as the Dupuy truck. Behind the defendant's truck was a Plymouth automobile being driven by the witness Brinsum. His wife, Mrs. Brinsum, who was also a witness in the case was in the car with him.
Plaintiff contended that at the time of the accident the Dupuy truck had just passed or was still in the act of passing another truck and, therefore, a portion of the trailer was in the truck's wrong lane of traffic, that is, over the center line of the highway, and that in passing at the time he did he violated both Paragraphs (c) and (d) as above set forth.
The District Judge has correctly summed up the testimony and reached a proper conclusion in answer to the contention of the plaintiff that there was negligence on the part of Dupuy in attempting to pass the Esso truck in a curve, and, therefore, we quote from his reasons as follows: "The first point that was raised was that there was negligence on the part of Dupuy in attempting to pass the Esso truck in a curve. Let's examine all of the circumstances surrounding the passage of the Esso truck by the Dupuy truck. One of plaintiff's witnesses, Mr. Cheramie, who was driving the Esso truck, says that he first noticed the Dupuy truck in his rear view mirror while both trucks were in a curve; that Mr. Dupuy, in the manner of a careful driver, pulled up behind him and did not attempt to pass him in that curve; that they got to a straightaway, which Mr. Cheramie estimated to be about five hundred feet in length, that is, he says there was a distance of about five hundred feet between the two curves referred to in the testimony. The first curve was the curve in which the Esso truck, *Page 675 
driven by Cheramie, was proceeding when the Dupuy truck approached from the rear. At the time that Dupuy was five hundred feet away from the curve where his truck made impact with Savoie's car, Savoie's car must have been some distance away from that curve, and, therefore, it could not have been in view so as to give warning to Dupuy that he should not venture a passage of the Esso truck in the straightaway. Cheramie testified that Dupuy waited until both trucks had entered the straightaway then ventured to pass the Esso truck; that Dupuy passed the Esso truck about midway of the straightaway, at a point about two hundred and fifty feet from each of the curves; that is, Dupuy was passing the Esso truck while there was still two hundred and fifty feet ahead of him before he reached the next curve. The fact that he waited until he reached a straightaway indicates, as Cheramie's testimony avers, that Dupuy attempted to exercise care and caution in passing the Esso truck. Now, the fact that Dupuy actually did have time to pass the Esso truck before reaching the next curve is confirmed by the further testimony of the Brinsums. The testimony indicated that not only did Dupuy have sufficient time to pass the Esso truck before entering the next curve, but even Brinsum estimated that his car also, which car was travelling behind the Dupuy truck, had time to pass the Esso truck before entering the next curve. The testimony shows that both the Dupuy truck and the Brinsum car did negotiate the passage of the Esso truck before the next curve was reached."
"All those circumstances convince me, and it is my belief, that there was no negligence on Dupuy's part in venturing a passage of the Esso truck on the straightaway that was described in some detail by Mr. Cheramie. I believe that Mr. Cheramie was in a good position to describe the approximate distance of that straightaway and of the surrounding curves because of the fact that he passes there so often. He undertook to draw with his own hand a substantially long stretch of highway at which time he mentioned that he passed there, as I recall it, not less than four times a day and sometimes as often as twelve times a day, indicating a very thorough knowledge of the highway in that general area. Therefore, I am disposed to believe that the approximate measurements which Mr. Cheramie gave are correct."
"Now, if there was no negligence at that point, at the time that the Dupuy truck passed the Esso truck in the straightaway, then the negligence, if there was any, must necessarily have occurred at some other point."
Plaintiff further contended that a portion of the trailer of the Dupuy truck protruded over the center line of the highway. Although this was an 18 foot blacktopped highway at the point of the accident, it had no definitely marked center line and, therefore, the testimony of the witnesses as to the center of the highway is approximate and to the best of their judgment.
This accident occurred just as the Dupuy truck reached the beginning of the second curve and just as the plaintiff was coming out of the curve into the straightaway. Plaintiff denies that he ever crossed over the center of the highway to the left hand side, and, on the contrary, testified that the defendant's truck "must have been a couple of feet, two or three feet on my side the highway." The defendant Dupuy is as firm in his testimony that his truck did not cross the center line but that he was in his proper lane of traffic at the time of the collision and that he even pulled further to his right as he saw plaintiff coming out of the curve on to Dupuy's side of the road, and he testified that plaintiff struck the trailer portion of his truck. Dupuy testified that he first saw the plaintiff's car about 200 feet in front of him and that at that time he was on his proper side of the road but that "as he kept coming on me he gradually was getting on his left side of the road which was on my side, because it was in a gradual curve where we met."
Although Dupuy testified that the plaintiff was traveling 60 or 65 miles per hour, we believe that the District Judge is correct in stating that the "plaintiff was travelling approximately 40 or 45 miles per hour, and the defendant 30 or 35." *Page 676 
Cheramie, who testified on behalf of the plaintiff, stated that the Dupuy truck passed him first and then the Brinsum car passed him and just had room to squeeze in between the Dupuy truck and his Esso truck. He stated that he saw Dupuy when he swung sharply to the right, which corroborates Dupuy's testimony in this respect. However, he testified that after Dupuy had done this, it "put the back end of his trailer in the center of the road or possibly a foot or two to the left." He frankly states that that was an estimate on his part.
On the other hand, we have the testimony of Mrs. Brinsum whose car was directly behind the Dupuy truck just prior to and at the time of the accident, who testified that the Dupuy truck passed the Esso truck and got back into its proper lane of travel and that her husband passed around the Esso truck also, and as they passed the Esso truck she noticed the Savoie car coming around the curve and called her husband's attention to the fact, whereupon he pulled in behind the Dupuy truck. She testified positively that they had time to pull in behind the Dupuy truck and that the Dupuy truck was traveling on its side of the highway; that she paid no more attention and at the time of the impact had her head down as she was crocheting. However, the accident happened immediately after they had taken their position behind the Dupuy truck. Her husband, Barney Brinsum, corroborates his wife's testimony and Dupuy's testimony that Dupuy's truck had successfully passed the Esso truck and gotten back into its proper lane of traffic, and that he had also passed the Esso truck and gotten in between the Esso truck and Dupuy truck at the time the accident happened. He stated that as he got past the Esso truck his wife called his attention to the fact that there was a car coming around the curve which was the plaintiff's car. He was directly behind the Dupuy truck and testifies positively that this truck was on its proper side of the road with no part of the truck or trailer protruding over the center line. Brinsum further testified that the Savoie car as it came out of the curve crossed over the center line of the highway into the defendant's lane of traffic and, at the time of the impact was still a slight distance over the center line and that the defendant pulled to his right in an attempt to avoid the collision.
After the accident it was investigated by State Trooper Eddie St. Marie who, at the time of the trial, was one of the Deputy Sheriffs of Lafourche parish. He testified that the accident happened in a gradual curve, however, according to the maps and other testimony in evidence, the accident happened in such a gradual curve that a motor vehicle could clearly see from one end to the other of the gradual curve. It was apparently almost the same as a straightaway. The Chevrolet car belonging to the plaintiff had a spot light on it just to the front of the left front door, and it was from this spot light all the way to the back of the Savoie car that was damaged. This witness definitely testified that from the center of the trailer all the way to the back it was rubbed clean, and he refers to another "pocket" on the back that protruded an inch and a half out from the trailer, and it was this protrusion which he thought did the most damage to plaintiff's Chevrolet automobile. He also testified that the left rear wheel and the tire of the trailer were rubbed clean of any dust and that there was a cut on the tire approximately two inches long. The automobile and the Dupuy truck stopped 400 feet apart, the truck being approximately 95 feet from the point of collision, for at that distance from the truck the Trooper found some glass which he testified was part of the spot light glass from the plaintiff's car, and also "there was some shells that was thrown there, little pebbles. * * *." The glass which he testified to having found on the highway was about in the center.
Thus as we view this case, we have the testimony of plaintiff and his witness, Cheramie, which is opposed by the testimony of the defendant and Mr. and Mrs. Brinsum. It would seem that the Brinsums were in a better position to testify as to who was over the center line than Cheramie who was behind their car. Also, the only physical facts which we have indicate that the accident happened at or near the *Page 677 
center of the highway but they do not establish to any certainty that either plaintiff or defendant was over the center line.
Therefore, taking all of the testimony in the case, we are of the opinion that the plaintiff has failed to prove his case by a preponderance of the evidence. The judgment of the District Court is accordingly affirmed.