McBRIDE, Judge.
On October 11, 1945, at about 6:50 p. m., plaintiff, who was walking in a southerly direction longitudinally with and about eight feet from the edge of State Highway No. 31 at Belle Chasse, Parish of Pla-quemines, sustained injuries in an unusual *216 manner by virtue óf a vehicular collision on the highway. A stake-body truck, owned by Morgan City Packing Company loaded with empty shrimp boxes weighing about ten pounds each, was proceeding on its proper side of the highway in the same direction as plaintiff. Two trucks with dump bodies partially filled with shells approached from the opposite direction, the second of these trucks, being disabled, was towed by the first. The Morgan City Packing Company vehicle safely passed the lead truck but a collision occurred between the Morgan City Packing Company truck and the truck under tow. The impact sheared off a part of the body on the left side of the Morgan City Packing Company truck and caused the resulting debris and perhaps some of the shrimp boxes to be thrown into the air and over the side of the Morgan City Packing Company truck. Plaintiff was struck by some of the flying missiles and knocked unconscious.
Plaintiff, Clifford Landry Treadaway, an emancipated minor, brought this suit for $35,000, for personal injuries and future medical expenses against the Morgan City Packing Company, Jacob Marphis, the operator of the first dump truck, and Cornelius Brunet, who was steering the dump truck under tow. It is alleged that the operators of the three vehicles were guilty of joint and concurrent negligence, and plaintiff prayed for a judgment against all defendants in solido.
The only contest before us is between plaintiff and Brunet, the latter having appealed from the judgment against him and in plaintiff’s favor for $4,000. The suit as against the other two defendants was dismissed and plaintiff did not see fit to appeal from that portion of the judgment.
Brunet first contends that he was free from any and all negligence and seeks to impress us that the collision was caused solely and only by the recklessness and carelessness of Vance, the operator of the Morgan City Packing Company truck. His argument is that Vance was driving at an excessive rate of speed and failed to have his truck under proper control. After a reading and careful analysis of the evidence, we, without hesitancy, conclude that counsel’s argument has no valid foundation.
The trial judge found that the sole and proximate cause of the accident was Brunet’s negligence, and the evidence reflects that this finding is the only one which could logically be reached. The towing operation was being accomplished by means of a chain fifteen feet long; this tow chain was attached to a channel iron on the rear of Marphis’ truck and to the front bumper of Brunet’s truck. However, the chain was affixed in a rather unusual position. Instead of being positioned in the middle of the rear of Marphis’ truck and the middle portion of Brunet’s truck, the chain was to the right-hand side of the respective vehicles. It is not difficult to surmise that Brunet’s truck, towed at a rate of 25 miles per hour, traveled along the narrow twenty-foot highway with a sway to the left. Neither plaintiff nor his companion with whom he was walking has any knowledge as to the cause of the collision. Marphis did not see the impact as he kept his eyes on the road ahead. The only evidence bearing on the all-important point in the case, that is, which of the two vehicles crossed the stripe marking the center of the highway, emanates from Vance and Brunet. A comparison of their testimony bolsters our theory that the unusual manner of the tow caused Brunet’s truck to encroach upon the opposite travel lane and come into contact with the body of the Morgan City Packing Company truck.
Brunet stated:
“Well, Jake, Mr. Marphis, was towing me and I am watching the truck ahead of me, and this Morgan City Packing Company truck come and hit the side of my truck and that’s all I can tell you.”
Vance’s testimony, which can readily be believed, is:
“When I first saw the second truck after I passed the first truck, when I saw the second truck he was coming *217 towards me in front of my truck and bit me in passing, and that’s how he caught the front of the body in hade of the cab.”
In an alternative plea, Brunet -charges plaintiff with contributory negligence, the gravamen of the plea being that a paved sidewalk is provided for pedestrians which parallels and is located at •some distance from the highway, and that ■plaintiff’s proper place was upon the sidewalk. Plaintiff had walked along the sidewalk until such time as he reached a section thereof which was overgrown with weeds and high grass. Wishing to avoid the discomforture of having his clothes dampened by the vegetation, plaintiff stepped from the sidewalk and continued along a path situated somewhere between the edge of the sidewalk and the edge of the highway. We are convinced he was nearer the sidewalk than to the highway. Even though the sidewalk was provided for pedestrian travel, by no stretch of the imagination can it be said that Treadaway was •guilty of negligence having even the most remote connection with the crash of the two trucks. He acted in a prudent manner in keeping at such a distance from the highway as to be out of danger of being struck by passing vehicles. True, his position ultimately proved to be an unfortunate one, but that fact cannot form any foundation for defendant’s plea. Contributory negligence is an act or omission of the plaintiff amounting to want of ordinary ■care, which, concurring with the negligent act of the defendant, is the proximate cause ■of the injury.
Upon recovering consciousness, Treadaway was unable to stand on his left leg; he was conveyed to a hospital and hospitalization continued for a period just short of six months. His injuries consist-ed of a fracture of the fibula of the left leg and a fracture of the lower extremity of the left tibia, including the internal mal-leolus and the left astragalus; he was operated on for a reduction of the fracture which was accomplished by the insertion of metal screws. As a result of the injuries Treadaway has a permanent deformity of the inner prominence of the ankle caused by a displacement of the astragalus or bone which forms the ankle joint proper, coupled with permanent injuries caused by the damage to the lower end of the tibia and the internal malleolus. Treadaway’s motive power and free movement of the left leg have been permanently impaired. The muscles of the left thigh, left leg, and foot have become atrophied and can only be partially corrected by prolonged orthopedic treatments and the use of specially designed orthopedic aids. He has suffered a sixty per cent permanent disability.
Plaintiff produced none of the attending physicians from the Naval Hospital, but Dr. Rufus H. Alldredge made an examination of plaintiff on April 6, 1953, and this physician was able to discern and ascertain the injuries which Treadaway had sustained.
Even in the absence of the testimony of the attending physicians, we find in the record sufficient evidence which discloses the nature of the injuries sustained by plaintiff and the ultimate state of his physical condition. We do not believe that the award of $4,000 can be said to be excessive.
Plaintiff failed to answer Brunet’s appeal, and we can give no consideration to the prayer contained in his brief that the award be increased. For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.