AYRES, Judge.
This is an action in tort. Plaintiffs, husband .and wife, seek to recover damages for personal injuries sustained by the wife and property damage and expenses of medical treatment of the injuries sustained, incurred as the result of an automobile collision. The vehicles involved were a Dodge automobile owned by plaintiff, Roscoe C. McDaniel, and driven at the time by his wife, plaintiff Mattie McDaniel, and a Buick automobile owned and driven by Hardy W. Walker. Made defendants are Walker and his public liability insurer, Newark Insurance Company. The defendant, Walker, reconvened for damages for personal injuries and property damage sustained by him. From a judgment rejecting the demands of plaintiffs and the reconventional demand of the defendant, plaintiffs and the named defendant appealed.
The accident occurred on a Sunday afternoon, October 17, 1954, at about 5:00 o’clock P.M. on State Highway 1, formerly State Highway 8, about 6 miles north of Shreveport, Louisiana. This highway is a concrete paved thoroughfare approximately 22 feet wide, and, in the vicinity of the accident and for a considerable distance in each direction therefrom, straight and approximately level. The highway extends in a general north and south course. ■The accident occurred near the McDaniel grocery and filling station owned and operated by plaintiff, Roscoe C. McDaniel, and located on the west side of the highway. Opposite the grocery and filling station is a 15-foot shoulder. On the west side of the highway the shoulder is 34 feet wide, including a 5-foot strip of asphalt, adjacent to and extending alongside the concrete pavement for a distance of 207 feet, 4 inches. This is in front of the grocery and station, which set back approximately 30 feet from the pavement. Other than as stated, the shoulder and driveways to the store and station are surfaced with gravel.
On the occasion of the accident, plaintiff, ■ Mattie McDaniel, was driving the family automobile in a northerly direction on Highway 1 toward the grocery and filling station, upon the premises of which is located their residence or living quarters. As she approached the driveway leading to the aforesaid place of business and residence, she met an oncoming car, whereupon she stopped and awaited its passage, after which, although seeing the Walker car approaching in the opposite direction at a considerable distance ahead, she began to maneuver her car to the left in the execution of a left-hand turn from the highway to the driveway leading to the left side of the grocery and station. On reaching a point established to be 13 feet, 5 inches distant from and west of the concrete pavement, her car was struck on its right side by defendant’s Buick and knocked a distance of 84 feet, 7 inches, through a fence into a pasture. The Buick spun around and came to rest facing in the direction from which it had come. Both cars were demolished.
Negligence charged to defendant Walker ■ consists of excessive speed at a rate of more than 85 miles per hour, failure to maintain a proper lookout or to keep his automobile under proper control or to timely apply his brakes, and leaving the highway and striking plaintiff’s automobile. In the alternative, the doctrine of last clear chance is relied upon.
In response to plaintiff’s demands, defendants denied any negligence on Walk- . er’s part and attributed the occurrence of the accident entirely to the fault of the plaintiff, Mattie McDaniel. She is specifically charged with a failure to make proper observation in order to ascertain • whether a left-hand turn could be made in ■safety and without unduly obstructing or impeding the normal flow of traffic on the highway. In this respect, she is charged with failure to stop before attempting the *210 turn or to maintain a proper lookout or to have her car under control or to yield the right of way to defendant’s car. • In the alternative, she is charged, in the aforesaid particulars, with contributory negligence.
These facts are either admitted or established by the evidence.- Plaintiff, Mattie McDaniel, was driving north on Highway 1 at a very reasonable speed. As she approached the store and filling station, she reduced her speed and finally stopped in her right-hand lane of travel to await the meeting and passing of an oncoming automobile. On its passage, she signaled her intention of making a left turn and began the maneuver at a very slow rate of speed. At the time she began the execution of this turn, Walker’s car was approaching from the opposite direction at a considerable distance, which she says she saw, and from the distance she reasoned there was ample time and opportunity for her to make the turn. This she did, and after leaving the concrete slab and reaching a point exceeding 13 feet distant therefrom, she heard the noise of defendant’s car, which with its front struck the right-hand side of her car, with the aforesaid result to the cars, rendering her unconscious and inflicting the injuries for which she seeks-the recovery of damages.
The evidence leaves no doubt that Walker was traveling at an excessive rate of speed. The force of the impact, the demolition of the cars and the knocking of the Dodge a distance exceeding 84 feet are mute evidence of that fact and, in view of the corroborating testimony, are most convincing. Clarence W. Collins, who was proceeding from Mooringsport to Shreveport in a southerly direction on Highway 1 immediately prior to the occurrence of the accident, testified that at a point after-wards determined to be 2.2 miles beyond the scene of the accident, defendant Walker passed him at a speed which he estimated at 85 miles per hour. His estimate was arrived at in comparison with his own speed of 60 miles per hour. Mr. and Mrs. H. G. McClure, who were only 450 or 500 feet away in the intersection of a driveway leading from their son’s residence, awaited and witnessed the passing of defendant’s car. Their estimate was that defendant was traveling 70 to 80 miles an hour, and, at the time, expressed anxiety for the driver’s safety.
On the day following the accident, Walker gave a written statement wherein he stated that as he was proceeding toward Shreveport in a southerly direction he saw an oncoming car, which was afterwards established to be that of plaintiff, at a distance of about 300 yards, which began slowing down when about 100 yards distant. Whereupon, thinking that the driver was intending a left turn, he blew his horn and reduced his speed from 50 miles per hour, and when within 50 to 75 feet from the car, further reduced his speed to 30 miles per hour. He testified he did not reduce his speed when he first saw the approaching car but did do so when it was 150 yards away, and, that when only 20 or 25 feet away, the plaintiff suddenly turned left in front of his car. When this occurred, he alleged that he immediately applied his brakes, which he said were in excellent condition, in an effort to stop, and steered his car to the right. From his testimony his automobile was equipped with power brakes; he was unaccustomed to their use and was apprehensive of the danger involved in suddenly applying such brakes, in consequence of which he failed to fully apply his brakes but continued forward hoping to avoid an impending accident. Trooper J. C. Baker of the State Highway Patrol testified the Buick skidded 100 feet to the point of impact. Significant also is Baker’s testimony that Walker stated he was 300 feet away from the McDaniel car when he realized the danger of an accident.
Defendants contend that the action of Mattie McDaniel in making a left-hand turn is recognized as one of the most hazardous maneuvers that a motorist can per *211 form and that it should not he attempted except with the utmost caution and never without first ascertaining that it can be made in safety and without unduly impeding or obstructing the normal movement of traffic proceeding in either direction. Numerous authorities are cited in support of this principle. We are thoroughly in accord with the pronouncements of the cited cases and recognize that the principle is well established in the jurisprudence of this State. The language used in White v. American Employers Insurance Co., La.App., 197 So. 803, 805, is that—
“While a motorist in making a left hand turn on a highway in the face of oncoming traffic is required to exercise great caution and see that such turn can be made in safety, such a rule does not prevent the motorist from making the left hand turn if the oncoming traffic is of a sufficient distance to permit the execution thereof prior to the reaching of the oncoming traffic at the turning point. In judging whether or not such a left hand turn can be made in safety, a motorist has the right to assume that the oncoming traffic is traveling at a lawful speed and that the driver thereof is exercising a proper lookout and has the vehicle under proper control. Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 2, § 1049; Brown v. Dalton, La.App., 143 So. 672.”
Appropriate to the facts in the instant case is a statement of this court in White v. Neff, La.App., 11 So.2d 289, 290, involving somewhat similar facts and circumstances. There it was stated:
“On observing the automobile at the mentioned distance of 450 feet, but not then being aware of its excessive speed, Kelly was justified in believing that it was approaching in a lawful manner and that he had sufficient time in which to negotiate in safety his intended turn to the left. Had an approach of that character been made, Kelly would have safely completed his turning and the automobile could have continued along the right traffic lane of Youree Drive without mishap. From this it follows, and we hold, that the gross negligence of the driver McFadden in speeding and not having his car under the required control was the proximate cause of the collision.”
This court further observed in Kelly v. Neff, La.App., 14 So.2d 657, 660, that—
“But, it is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so. He has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes from such survey that conditions warrant such action; in doing so, relying upon the presumption that other motorists in sight are observing and will continue to observe speed limitations. When the motorist acts in such circumstances and a collision occurs because of the excessive speed of the other fellow, the obvious and proximate cause of the accident is the excessive speed.”
See also—
Massicot v. Nolan, La.App., 65 So.2d 648.
Moreover, Walker’s actions in driving at a grossly excessive rate of speed create a presumption of fault and responsibility.
“ * * * The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have.” LSA-R.S. 32:237, subd. A;
and § 227 of the Statute provides that—
“In addition to the specific speed limitations of this Chapter, no person shall operate any vehicle upon the high *212 ways of this state at other than a reasonable and proper speed under the circumstances, or at a speed endangering the persons or property of others.
“Whoever operates a vehicle in violation of the speed limitations of this Chapter shall be prima facie at fault and responsible for any accident proximately caused by such operation.”
However, under the facts established in the record of this case, sole reliance upon the presumption of fault and responsibility on the part of the defendant, Walker, is unnecessary as the record convincingly establishes beyond peradventure of serious doubt that the sole and proximate cause of the accident was Walker's excessive speed and lack of control of his automobile.
Defendants urge that Mattie McDaniel was guilty of negligence constituting a proximate cause, or at least a contributing cause, of the accident barring her recovery by her failure to look and to observe the approach of defendant’s car prior to the beginning of her execution of a left-hand turn, although she testified to the contrary. But, if it be conceded that she did not look, her failure in that respect does not constitute a contributing factor in the occurrence of the accident. The evidence leaves no doubt that had she looked prior to the maneuver, she would have seen the Walker car at a considerable distance down the highway, from which she could have and, no doubt, would have reasonably concluded she had time and opportunity to complete the maneuver intended before the arrival of the car, had it been proceeding within legal speed limits. In this connection it was stated in White v. American Employers Insurance Co., supra:
“As to the question of contributory negligence on the part of Mrs. White, the worst that can be said is that she failed to see the Anderson car until just prior to the collision. It appears that the Anderson car must have been some three hundred feet or more ahead of her, coming in her direction, when she started to make the left turn. If she did look, as she says she did — and like the district judge we see no reason to disbelieve her — and saw no oncoming traffic save the horse-drawn cart, for more than two hundred feet, she was not, as a matter of law, guilty of negligence.”
Next for consideration is the quantum of damages to compensate plaintiff, Mattie McDaniel, for the injuries sustained. At the time of the accident she was 48 years of age, in good physical condition, able to do and doing her house work and assisting her husband in the operation of their mercantile establishment. According to plaintiff’s testimony, as a result of the accident she was rendered unconscious, her collar bone broken, her right shoulder dislocated and knocked out of place and her right knee lacerated. She testified of suffering considerable pain following the accident and the persistence of this suffering until the trial two years following the accident, accompanied by a limitation of motion in her right arm, preventing its being raised to even shoulder height.
Plaintiff was forthwith examined by Dr. Edwin C. Simonton, an orthopedist, and treated by him. The Doctor found that plaintiff suffered an acromioclavicular separation of the right shoulder, with tearing of the muscles about the joint. This required surgery for its repair by an open reduction and the insertion of a Rush nail to reduce the separation and hold the joint in place. The laceration of plaintiff’s right knee was sutured. Plaintiff’s injuries as aforesaid, according to Dr. Simonton, were of such nature as would and did cause considerable pain and suffering. She was hospitalized from the date of injury to October 20, 1954, during which time she underwent the aforesaid surgery, after which she was permitted to return home. According to Dr. Simonton, plaintiff was completely disabled until November 29, 1954. In the meantime, she wore a Velpeau type dressing to hold the arm in place and reduce *213 motion. Because of continued pain in her shoulder plaintiff returned for treatment on January 10, 1955, when, upon examination, it was revealed that the Rush nail had protruded or slipped outward from its original position. This nail was removed by surgery under local anaesthetic January 20, 1955. Sutures for this operation were removed on January 25, 1955, and the incision was found to be well healed. A subsequent examination disclosed that the abduction or extension of her right shoulder was limited to 20 degrees less than a horizontal position, the effect of which, as the Doctor testified, would make difficult any procedure involving reaching over her head and particularly out to the side. A particular difficulty mentioned was one that would be experienced in attempting to comb her hair. The Doctor’s estimate was a 15 percent permanent partial disability in the right shoulder.
Dr. Willis J. Taylor testified as a result of an examination of plaintiff by him on October 11, 1956, that despite the previous reduction of the separated shoulder, re-displacement had occurred so that the outer end of the clavicle or collar bone was displaced downward. He expressed an opinion that she should undergo a third operation wherein approximately one inch from the outer end of the collar bone should be removed to prevent contact, which, he says, would relieve the pain experienced but would not have the effect of relieving the disability. The re-displacement of the bones in the shoulder would, in his opinion, produce the persistent pain of which plaintiff complained. His opinion was that she had suffered a 30 percent permanent disability in the right shoulder and 17 percent of the right arm.
It is noted, therefore, that the findings and conclusions of these experts are not wholly in accord. No medical testimony was offered by defendants. It does not appear that plaintiff is seriously handicapped. But, it does appear she has and will hereafter experience some difficulty in the performance of some of the chores as housewife and helper in her husband’s store. For the pain and suffering undergone and discomfort experienced and for the injuries and disabilities sustained, an award of $4,000 is adequate in compensation.
As for the special damages claimed by plaintiff, Roscoe C. McDaniel, it was stipulated that the loss to the Dodge automobile amounted to the sum of $365, plus a wrecker charge of $19.38; that medical bills were incurred in the North Louisiana Hospital in the sum of $154.10 and at the North Louisiana Clinic for $20 and that $50 was expended for extra help at the McDaniel grocery as the result of the wife’s injuries and disabilities. Dr. Simonton’s charges were established in the sum of $330, as were future medical bills in the sum of $130, all of which aggregated the sum of $1068.48. This amount plaintiff, Roscoe C. McDaniel, should recover.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and
It is now Ordered, Adjudged and Decreed there be judgment herein in favor of the plaintiff, Mattie McDaniel, against the defendants, Hardy W. Walker and the Newark Insurance Company, in solido, for the full sum of $4,000, with 5 percent per annum interest thereon from judicial demand until paid, and
It is further Ordered, Adjudged and Decreed there be judgment in favor of the plaintiff, Roscoe C. McDaniel, against the defendants, Hardy W. Walker and the Newark Insurance Company, in solido, for the full sum of $1068.48, with 5 percent per annum interest thereon from judicial demand until paid, and for all costs, including the cost of this appeal.
Reversed and rendered.
HARDY, J., absent.