■GLADNEY, Judge.
The petitioner, C. E. Cotton, instituted this, a direct action, as authorized by LSA-R.S. 22:655, against American Indemnity Company, liability insurer of Jack Tiffee, for recovery of damages for personal injuries received by him in an automobile collision on February 27, 1956, while traveling on U. S. Highway No. 84 east of Jonesville, Louisiana. Following a trial, judgment was rendered favorable to complainant and defendant has appealed.
On the date aforesaid about 11:00 ■o’clock A.M., C. E. Cotton, accompanied by his wife and one and one-half year old ■child, was driving a 1955 model Plymouth four-door sedan owned by his father, R. ,M. Cotton, with the latter’s permission and • consent. The vehicle was proceeding in an easterly direction at a speed of about ■45 miles per hour. The purpose of the journey was to visit the home of R. M. •Cotton, located about three miles east of Jonesville on the south side of the highway. For a considerable distance in both ■ directions along the highway from Cotton’s driveway the road is level and - straight, and on that particular day the -weather was clear and the pavement dry.
C. E. Cotton testified as he approached • the driveway leading into his father’s "home, he slackened the speed of his car ■..from 45 miles per hour to a speed of from 5 to 10 miles per hour, and when 150 to 200 feet from the driveway he evidenced his intention of making a left turn by turning on his left blinker light. Upon further observation he perceived the truck of J. D. Chevallier which was following had observed his signal and adjusted its speed, whereupon petitioner undertook to make a left turn into the driveway. After he had started into his turn and was almost across the paved part of the highway, he heard the squealing of brakes and glanced up to see an automobile driven by defendant’s insured, Jack Tiffee, skidding toward him. Until this moment he had no knowledge of any other vehicle behind him other than the Chevallier truck. Cotton further testified he did not hear a horn signal which Tiffee said he gave, and which Chevallier said he heard.
Jack Tiffee testified he was traveling in the same direction as Cotton at a speed of from 55 to 60 miles per hour when he came up behind the Chevallier vehicle, a GMC one-half ton truck, upon which was fitted a stock body. He overtook the truck and commenced a passing movement, at which time he could neither see over nor around the Chevallier truck, and he said that as he commenced his passing movement he blew his horn and then observed for the first time the Plymouth commencing a left turn in front of him, whereupon he applied his brakes.
The testimony of State Trooper Charles B. James discloses he ascertained from the tire marks the Tiffee car skidded 80 feet before crashing into the Plymouth which was pushed then sideways 75 feet. Besides the drivers of the two cars and J. D. Chevallier, there were three others present, one of these being Mrs. C. E. Cotton, and the others being Mrs. A. A. Tiffee and Mrs. Natalie Pecanty, the mother and sister respectively of Jack Tiffee. Their testimony is not enlightening except that of Mrs. Pecanty as to the speed of the Tiffee automobile. Mrs. Cotton was reading her mail and did not observe the appi'oach of the Tiffee car. Mrs. Tiffee *344 said she had warned her son not to drive over 60, hut she did not know at what speed he was traveling just before the accident. Mrs. Pecanty testified Tiffee was proceeding about 60 miles per hour when he overtook and began to pass the Cheval-lier truck, at which time he sounded his horn. She could not estimate the distance between the Tiffee and Cotton automobiles when Cotton turned into the southbound traffic lane, but stated Tiffee could not have turned back to the right ahead of the Chevallier truck and thus avoid the collision.
Chevallier’s testimony was somewhat confusing as to the distance between his truck and the Cotton automobile when he first observed the blinker signal of the Cotton vehicle. His statement gave this distance as from 50 to 60 feet to from 100 to 150 feet. He said he could not remember whether the Tiffee vehicle was behind him or engaged in passing when he heard the horn of the Tiffee vehicle. He estimated the speed of the overtaking car at from 50 to 60 miles per hour.
Officer James further testified that Tif-fee, after first telling him his speed had been from 55 to 60, said that he did not know what his speed was and it was possible he was traveling 70 miles per hour. Although generally considered as inadmissible testimony, James was permitted to testify that on his official report of the accident he estimated the speed of Tiffee at 75 miles per hour. As a result of the collision the Plymouth owned by R. M. Cotton was a total loss, and C. E. Cotton sustained personal injuries which required him to remain away from his employment for approximately ten days.
The trial judge held the sole and proximate cause of the collision was due to Tiffee in not having complete control over his car due to his excessive speed and that he did not keep a proper lookout or he could have foreseen the maneuver Cotton was abput to make. As authority for his ruling, the judge cited two decisions of this court, Paggett v. Travelers Indemnity Co., 1957, 99 So.2d 173, and McDaniel v. Walker, 1959, 111 So.2d 208.
Plaintiff asserts he gave a proper and timely indication of his left turning maneuver, that he was free of negligence and that the sole and only cause of the accident was the negligence of Tiffee in traveling at such an excessive rate of speed, in not making proper observation ahead and in not maintaining control of his vehicle. The defense is predicated upon charges that Cotton was negligent in not giving the manual signal for a left hand movement, and failed to make proper and timely observation of traffic approaching from the rear. Defendant also relies upon the last clear chance doctrine and a special plea of contributory negligence.
From our appreciation of the record certain facts have been established by a preponderance of the evidence and these are: Cotton, when 100 to 150 feet from the-driveway, gave a signal by turning on his. blinker lights to indicate his left turn; at the time Chevallier was from 50 to 150 feet to the rear and observed the signal; Cotton observed Chevallier conform to the signal by adjusting his speed to that of the Cotton vehicle; and then Tiffee approached behind' Chevallier, sounded his horn and commenced passing both vehicles at a speed in. excess of 60 miles per hour, at which time Tiffee first saw that Cotton was engaged in executing a left turn. These proven facts bring the case in line with the rulings of this court in Paggett v. Travelers Indemnity Co. and McDaniel v. Walker, supra.
Another decision of this court relied upon by appellant is Anderson v. Brackin Motors, Inc., 1957, 95 So.2d 730. The authority is inapposite for in the cited case the-overtaking motorist was within 100 feet of and rapidly overtaking Anderson before the-latter commenced his turn and we said that had Anderson but looked he would have observed the danger in time for evasive ac *345 tion. In the instant case due to Tiffee’s excessive speed when he emerged from behind the Chevallier truck and saw Cotton •engaged in the turning movement, Tiffee was in all probability more than 150 feet from the point of impact. This is to be inferred from the 80 feet of skid marks made prior to the impact. These reflect that if it be assumed Tiffee was traveling 60 miles per hour, his velocity was 88 feet per second and the distance traveled during his reaction time, 66 feet per second, a total of 154 feet. The stopping distance for such speed under excellent conditions is calculated to be 207140 feet, according to the table accompanying an article by H. B. Barrett, entitled “Mechanics of Control and Lookout in Automobile Law”, 14 Tulane Law Review, 493, 503. Many additional authorities are cited in briefs of both counsel, but we see no advantage to be gained from a discussion of these, for they all fall with the pattern of the general principles found in our jurisprudence, but are to be distinguished from the instant case on the peculiar facts presented by the evidence produced in each case.
Our examination of the record and the reasons for judgment given by the trial judge do not indicate manifest error in his holding the insured of the appellant was guilty of negligence that was the sole proximate cause of the accident. We find no merit in the contention plaintiff was afforded an opportunity to avoid the accident under the last clear chance doctrine, nor do we find Cotton was contributorily negligent.
Plaintiff, a young man of 25 years, was married and had one child. As a result of the accident he received numerous bruises, cuts, contusions and abrasions, was rendered unconscious, and was partially paralyzed for over a week. He also sustained fractures of the 7th and 8th ribs on the left side, from which he was suffering pain a year after the accident. At the time •of the trial, February 5,1957, the trial judge was of the opinion plaintiff had apparently recovered from the ill effects of the accident. The award of $4,000 is, in our opinion, neither excessive nor inadequate.
The judgment is affirmed at appellant’s costs.