CULPEPPER, Judge.
This is a suit for damages for personal injuries to a guest passenger in one of the automobiles involved in a three-car collision. Plaintiff originally filed suit against the drivers of all three vehicles but later settled her claims against two of them, reserving her rights as against the driver of the third vehicle and her liability insurer who are the defendants and appellees herein. After trial on the merits in the lower court plaintiff’s suit against the instant defendants appellees was dismissed and she has now prosecuted this appeal.
The accident occurred a few miles east of the City of Opelousas on US Highway 190, which at this particular location is paved, has two lanes, runs approximately east and west and is straight for some distance in each direction from the scene of the accident. The collision occurred at about 5 o’clock p. m. on a clear day, April 3, 19S8.
All three vehicles involved in the collision were going east. In the lead was a 1958 Pontiac driven by Clarence Laudermilch. Next was a 1955 Pontiac Stationwagon being driven by Mrs. Vedie Winborn, defendant-appellee in the instant proceedings. The third car was a 1957 Mercury being driven by Mrs. Marjorie Breaux, and in which automobile the plaintiff was a guest passenger. The Laudermilch car was the third or fourth vehicle in a line of traffic which was slowing down to allow an eastbound truck to turn left off the highway. Plaintiff’s version of the accident is that the Breaux car had passed the Winborn car and returned to its right lane of traffic, where it followed the Laudermilch car for about three blocks, when the Laudermilch car suddenly stopped, causing Mrs. Breaux to apply her brakes and skid into the back of the Laudermilch car, which it struck very lightly, and that almost immediately the Breaux car was struck very hard from the rear by the Winborn car causing the Breaux car to be knocked forward so that it struck the Laudermilch car a second time. Plaintiff and her witnesses contend that the hardest impact and the one which caused plaintiff’s injuries was the one which occurred when the Winborn car hit the back of the Breaux vehicle rather than the first impact which occurred when the Breaux car first hit the Laudermilch car. Under this version of the facts, it is the contention of the plaintiff that Mrs. Winborn was negligent in following too close, not keeping a proper lookout and driving at an excessive speed under the circumstances.
The defendant’s version of the facts is that she had seen the line of cars ahead, slowing down for the truck, and she had reduced her speed to 35 to 40 MPH and was still slowing down and following at a distance of about two car lengths behind the Laudermilch car, when suddenly the Breaux car passed in the left lane and cut back into the short space between the Winborn and Laudermilch cars, violently striking the Laudermilch car, which by that time had slowed to a stop; that Mrs. Winborn applied her brakes and cut to the right in an effort to avoid the accident but was *338 unable to avoid striking the right rear bumper of the Breaux car a very light blow with her left front fender. Of course, Mrs. Winborn denies that the Breaux car had completed its pass and preceded her for a distance of three blocks before the impact. It is Mrs. Winborn’s contention that the sole proximate cause of the accident was the negligence of Mrs. Breaux in cutting in too quickly, into too short a space, and then striking the Laudermilch car and stopping immediately in such a manner that Mrs. Winborn was unable to avoid a collision.
Plaintiff’s testimony as to the facts of the accident is supported by two witnesses, Mrs. Maudry Breaux, who is plaintiff’s daughter and the driver of the Breaux car, and John Penny Ford, Mrs. Breaux’s son by a previous marriage, who was also an occupant of the Breaux vehicle. However, the testimony of Mr. and Mrs. Winborn as to the facts of the accident is corroborated by defendant’s witness, David Mc-Caleb, a passenger on the rear seat of the Laudermilch car, who was not shown to have any interest in this case whatsoever. Mr. McCaleb testified as follows:
“Q. Please tell the Court just how this accident occurred, what you saw and heard, and in other words, the accident according to your personal knowledge. A. To my best recollection I was in the right rear seat and I heard a squealing of brakes to the rear of the automobile in which I was sitting, and I quickly turned my head to the left and looked out over my left shoulder, out the rear window, and observed a Mercury automobile coming at a slight angle into the rear of our automobile.
“Q. Where was the Mercury coming from? A. Well, from the angle and from what observation I would say it' was coming from the left lane into the right lane.
“Q. What happened after that? A. It struck our car with a tremendous blow and knocked us forward approximately fifty yards on the shoulder and partly on the highway.”
McCaleb testified positively that immediately after he first heard the squealing of the brakes of the Breaux vehicle behind him, he turned and saw the Breaux car approximately 25 feet to the rear moving from the left or passing lane into the right lane behind the Laudermilch car, that as the Breaux vehicle cut in it jammed on its brakes and struck the Laudermilch car a very hard blow, and that the Laudermilch car was not struck again. This testimony corroborates completely defendant’s version of the accident.
The physical facts also support defendant’s version of the accident. Only the extreme right rear bumper of the Breaux car was damaged when it was struck by the left front bumper of the Winborn car. It seems highly improbable that such a contact between these two vehicles could have caused the tremendous impact described by plaintiff and her witnesses. It was apparently a glancing blow of little force. Furthermore, it seems improbable that the Breaux car was knocked forward by the Winborn car causing it to strike the Laudermilch car a second time,
In view of the above findings of fact, we have very little difficulty in concluding that Mrs. Winborn was free of negligence in either failing to keep a proper lookout, following too close or proceeding at an excessive speed under the circumstances. Under the facts which we have found, Mrs. Winborn was keeping a proper lookout as to the Laudermilch car which was preceding her and as to the Breaux car which suddenly passed and cut in front -of her. As regards following too close, the evidence shows that Mrs. Winborn, at a speed of 35 to 40 MPH was following at a distance of two car lengths, or approximately 40 to 50 feet, behind Laudermilch, and that both vehicles were slowing down. The Winborn vehicle did not strike the Laudermilch vehicle and we can conceive *339 of no theory under which plaintiff can show that the Winborn vehicle was following too close behind the Laudermilch car. As to plaintiff’s contention that Mrs. Winborn was following too close behind Mrs. Breaux, the facts which we have found, as set forth above, are that Mrs. Winborn had not been following Mrs. Breaux until Mrs. Breaux cut in front and stopped instantly. In this sudden emergency, caused by the negligence of the Breaux driver, Mrs. Winborn did everything that could reasonably be expected of her to avoid a collision. As to improper speed under the circumstances, it is plaintiff’s contention that Mrs. Winborn’s speed of 35 to 40 MPH was excessive under the circumstances that she was following only two car lengths behind Laudermilch who was at the time slowing down for the truck which was turning left off of the highway ahead. Mrs. Winborn testified that when the Breaux car passed her, she was going 35 to 40 MPH and was slowing down at the time. The evidence does not show how fast the Laudermilch car was going at the time the Breaux car passed the Winborn car. As stated above, the Win-born car did not strike the Laudermilch car and it is not shown that the Winborn car was proceeding at an excessive speed under the circumstances with relation to the Laudermilch car. Of course, after the Breaux car cut in front of her, it then developed that Mrs. Winborn, because of the short distance between her and the Breaux car in front of her, was unable to stop in time to avoid a collision. However, it is our opinion that the Winborn car, which, with relation to the Breaux car, was at the outset the lead car, was proceeding in a lawful manner and had a right to assume that any vehicle to its rear would not interfere with the lead vehicle’s free use of the road, such as by passing and cutting in and creating a dangerous situation as in the instant case. In the case of Crow v. Alesi, La.App. 1 Cir., 1952, 55 So.2d 16, 17, writ of certiorari denied, the court quoted from Greer v. Ware, La.App., 187 So. 842, as follows:
“ ‘We quote the following from the Greer case (187 So. 844):
“ ‘ “According to the law and jurisprudence of this state, when two automobiles are being driven along a public road in the same direction, on a country road, the driver of the front car holds no duty to the car in the rear, except to use the road in the usual way in keeping with the laws of the road, and until he has been made aware of the presence of such rear car by signal or otherwise, he has a right to assume that there is no other vehicle in close proximity in his rear or, if there is one there, it is under such control as not to interfere with his free use of the road in any lawful manner. And! in the absence of facts or circumstances that would put the driver of an automobile on notice of the near approach of another machine from the rear, he may drive slow or fast, select the parts of the road best suited to travel, stop or start at will. And where two automobiles are being driven along a highway in the same direction, the forward car has the superior right. This was held in the case of Stevens v. Dean, 6 La.App. 537.” ’ ”
There is nothing in the evidence of the instant case to show that, with relation to the Laudermilch car, Mrs. Winborn was either following too close, failing to keep a proper lookout or driving at an excessive speed. With reference to the Breaux car, the Winborn car was the lead vehicle, not the following vehicle, and the law expressed in Crow v. Alesi, supra, is applicable. Under the law as stated there, we have no difficulty in concluding that Mrs. Winborn was free of negligence.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.