134 So.2d 369 (1961)
Gabe E. BROUSSARD, Plaintiff-Appellee,
v.
SAVANT LUMBER COMPANY et al., Defendants-Appellants.
No. 360.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
Rehearing Denied November 29, 1961.
Rehearing Denied January 15, 1962.
Cavanaugh, Hickman, Brame & Holt, by Frank M. Brame, Lake Charles, for defendants-appellants.
John W. Hebert, Jennings, for plaintiff-appellee.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
The plaintiff was awarded judgment in the amount of $19,280.80 for certain damages sustained in a motor vehicle collision allegedly caused by the negligence of Joseph *370 Fontenot, an employee of the Savant Lumber Company. An appeal is taken from such judgment by the Savant Lumber Company and its liability insurer, the defendants. The plaintiff has answered the appeal, praying that the award be increased.
The accident occurred at 1:30 P.M. on the clear, dry afternoon of August 17, 1959, at the middle of a gradual curve on a blacktopped rural state highway, upon which two trucks were proceeding eastward, driven respectively by the plaintiff Broussard and by the defendants' driver Fontenot. Prior to the accident, Fontenot had stopped to make a left turn into a private driveway. The plaintiff Broussard, driving a dump truck heavily loaded with 16 tons of sand, was seriously injured in a head-on collision with a westbound truck driven by one Deshotel after the plaintiff had pulled into Deshotel's lane in order to avoid colliding with the stopped Fontenot truck-trailer.
In casting the defendants as the employer and the insurer of Fontenot, the trial court held that the sole and proximate cause of the accident was Fontenot's sudden and unsignalled stop in front of the plaintiff Broussard immediately after having overtaken and passed the latter at a speed in excess of 55 miles per hour.
The defendants' basic contention is that the cause of the accident was Broussard's failure to observe timely Fontenot's truck coming to a gradual stop in order to make a left turn. In support of this contention appellants' able counsel states that the evidence supports a finding that Fontenot passed Broussard one-quarter of a mile before the accident (rather than merely 600 feet as the trial court found) and that, after passing, Fontenot drew a sufficient distance ahead of Broussard so that Broussard should have noticed Fontenot's stop in time to avoid the accident.
The three driversBroussard, Fontenot, and Deshotelwere the only eyewitnesses to the accident.
The plaintiff Broussard testified that he was proceeding eastward at 35-40 mph prior to the accident. At an estimated speed of 50-55 mph, Fontenot's unloaded log truck passed the plaintiff about 650 feet east of the point of impact. (On direct and cross examination, Broussard stated that Fontenot drew even with him at 650 feet and drew back into his own lane at about 350 feet from the point of impact; under questioning by the trial court, he estimated that Fontenot had drawn back into the eastbound lane about 650 feet from the place of the accident.) Although Broussard replied in response to questioning that "not to my knowledge" did Fontenot slow down after the passing and that "I suppose he [Fontenot] did" continue afterwards at his estimated passing speed of 50-55 mph (Tr. 215), he also testified positively that following the passing and up until Fontenot suddenly stopped he was just 75-100 feet behind the Fontenot vehicle and that Fontenot "didn't gain anything" (Tr. 231-232; see Tr. 186, 214, cf. Tr. 215).
According to Broussard, the accident occurred because Fontenot made a sudden stop when Broussard was about 100 feet to his rear. After Fontenot had stopped, he put on his left turn signal light (Tr. 232), but he had made no prior signal of his intention to stop or to turn left. Broussard stated that, simultaneously with Fontenot's stopping, he saw the oncoming Deshotel truck in the other lane about 100 feet in front of the Fontenot vehicle; there was no time to stop, but he immediately applied his brakes and swerved left into the lane, colliding with the Deshotel truck as he did so. The place of impact was about even with the rear of the trailer of the Fontenot log truck. Broussard further stated that he did not observe Fontenot slowing but just saw him as if Fontenot had come to an immediate stop"He stopped all at once. Somebody called him or hollered at him, I do not know, but he stopped plenty suddenly." (Tr. 232.)
The defendants' driver, Fontenot, testified that he turned on his left turn light as *371 he passed the plaintiff approximately one-half mile from the driveway where the accident occurred, intending to turn in to go to his sister's home there. According to Fontenot he had speeded up to 55 mph to pass the plaintiff's truck, which was proceeding at a speed of 30-35 mph; Fontenot then had dropped back to 45 mph and, commencing 300 feet from the driveway, had gradually slowed, and he completely stopped when he saw that he could not complete his left turn due to the oncoming Deshotel vehicle. Fontenot believed he had been stopped at the driveway for about seven seconds before the accident. He further stated that Deshotel's oncoming truck was about 100 feet from him when he came to a complete stop and that it collided with the plaintiff's vehicle as it passed Fontenot's stopped truck.
The only other witness to the accident was Theogen Deshotel, driver of the oncoming westbound truck with which the plaintiff's truck collided when it turned left to miss the Fontenot trailer. The trial court indicated its confidence in the impartial nature of the testimony of this disinterested witness.
Deshotel stated that he was driving at about 40 mph and that he and Fontenot entered the curve from opposite ends at about the same time and crossed at the apex (where was situated the driveway into which Fontenot intended to turn left across Deshotel's lane). He saw the Fontenot truck stop and observed no stopping or turning signals; at the time of Fontenot's stop, he thought that Broussard was just 30 feet to Fontenot's rear (Tr. 164). Deshotel collided with Broussard when his own vehicle was approximately at the rear of the Fontenot trailer. This witness also estimated, however, that the Fontenot truck had been stopped in its own lane waiting to turn left into the driveway for a total of 3½ to 4 seconds before the accident.
State Trooper Jarnigan was the investigating police officer. He had arrived at the scene forty-five minutes after the accident, after the injured plaintiff had already been removed. Fontenot told the officer that he had passed Broussard "a short distance" before (Tr. 155), then had stopped completely because of the oncoming Deshotel vehicle before making his intended left turn. The trooper found "skid marks all over the road" where the colliding trucks had turned, but "no long skids" and "no skid marks leading to the Fontenot truck" (Tr. 162); which latter vehicle had, however, been moved before his arrival at the scene. Although he stated he "didn't say there was not any" significant skidmarks at the scene but only that "I don't have them on my report" (Tr. 158), he also admitted that he was quite sure he had checked for them and that he would have noted them on his report had he found them (Tr. 158, 162).
We may state, at this point, that we cannot take the witnesses' estimates of speeds and distances to be intended as precise proof of such matters. Witnesses often cannot accurately estimate times and distances even when consciously trying to do so; and this difficulty is compounded when, subsequent to an accident, witnesses try to estimate previously-insignificant details or to recollect what occurred during the split-seconds of sudden danger. For this reason, as impressive and skillful as they are, we cannot accept as controlling those arguments of either counsel which are based upon mathematical calculations which assumed various exact distances and constant speeds excerpted from the witnesses' testimony.
Having reviewed the evidence, we find no error in the trial court's acceptance of the testimony of Deshotel and Broussard as essentially correct, as corroborated to some extent by admissions Fontenot made to the investigating police officer at the time of the accident. Nor do we find error in the trial court's discarding, as essentially inaccurate, the testimony of Fontenot, the defendants' driver: Not only is the trial court better able to evaluate the credibility of witnesses than is an appellate tribunal, but we additionally find Fontenot's *372 testimony obviously inaccurate and unbelievable in instances which we need not detail here.
Based upon the testimony accepted as essentially correct by the trier of fact, the trial court correctly concluded, in our opinion, that Fontenot had passed Broussard not more than 600 feet before the accident and then, suddenly and without signal, stopped in Broussard's path when he saw that he could not complete his intended left turn into his sister's driveway. By his own admission Fontenot stopped without observation or thought for Broussard, whom he knew to be in his immediate rear. We further find that, following the passing and up until Fontenot's sudden stop, Broussard remained at about 100 feet to Fontenot's rear, probably because (as the latter testified) Fontenot slowed after passing Broussard.
Defendants' argument that there was a much greater distance between Fontenot and Broussard at the time of the former's stop depends upon certain mathematical computations based upon certain assumptions of constant speed following the passing. The evidence does not, however, sustain the defendants' contention as to these assumptions and, further, both Deshotel and Broussard, witnesses found credible by the trial court, positively testified as to a short interval between the two trucks at the time of Fontenot's sudden stop.
In addition, as both Fontenot and Deshotel testified, these two named drivers were approaching the driveway where the accident occurred at approximately the same speed, and they were each at an approximately equal distance from the driveway, at opposite ends of the curve, when they first observed one another. The accident occurred just as Deshotel drew even with the rear of Fontenot's truck-trailer.
Had the plaintiff Broussard been in fact any considerable distance to the rear of Fontenot, Deshotel should have passed by the stopped Fontenot vehicle before the plaintiff came up to it, and there would have been no accident. (Fontenot himself testified that the Deshotel truck was just 100 feet in front of him when he stopped, and that the Deshotel and Broussard vehicles collided as Deshotel drew past his front door. This again corroborates the finding that Broussard was to Fontenot's immediate rear when he stopped, since otherwise Deshotel at about 40 mph should have been able to clear Fontenot before Broussard at from 30-40 mph came up to the rear of Fontenot's truck.)
We must confess, however, that what gave us some pause before we reached the conclusion that Fontenot suddenly stopped is the lack of evidence as to brake skid marks made by his vehicle prior to the stop, such as we might reasonably suppose should result from such a sudden stop. Aside from the inaccurate Fontenot's testimony that there were none, the investigating police officer also testified that he had noted none on his report as significant, although he did find "skid marks all over the road" at the place of the accident. Broussard, to Fontenot's immediate rear, testified that he himself had applied his own brakes as soon as he realized the danger (Tr. 186); these brake marks in his lane must have been in the same area as any brake skid marks resulting from a sudden stop by Fontenot. We conclude that the absence of evidence as to skid marks specifically made by the Fontenot vehicle, does not, under all the circumstances, require us to discredit as erroneous the trial court's acceptance of the positive testimony of both Deshotel and Broussard that Fontenot stopped very suddenly.
(It is also of interest that Fontenot himself thought that he could have brought his truck to a complete stop from 45 mph within 25 feet, Tr. 278; which, however inconsistent with standard stopping distance charts, is at least indicative that the truck drivers testifying believed that Fontenot's truck could indeed have been stopped almost immediately, as the other two drivers testified.) In our opinion, therefore, our learned trial brother correctly held Fontenot's negligence to be the proximate cause of the *373 accident. As stated in the reasons for judgment, Fontenot was negligent "in passing Mr. Broussard's heavily loaded truck shortly before he intended to make a left turn into a private driveway, which private driveway is located in a curve of the highway. * * * When it developed that an oncoming truck prevented the Defendant [Fontenot] from making his left turn, he then made a quick stop. * * * By making this sudden stop under these conditions Mr. Fontenot traded the safety of the plaintiff for his own personal convenience, which constitutes gross negligence and was the proximate cause of the accident." Tr. 291-292.
As to the defendants' argument that the plaintiff's lack of lookout contributed to the accident in that he should have observed sooner the slowing and stopping of the preceding vehicle, we think that the trial court correctly held that such lack of lookout was not a contributory proximate cause of the accident since, as stated in the reasons for judgment:
"* * * It is readily apparent that the operator of a heavily loaded sand and gravel truck would not expect an unloaded truck to pass him and almost immediately after returning to the proper lane of travel make an emergency stop blocking the right-hand lane of traffic in a curve in the highway at a point where the other half of the highway was blocked by oncoming traffic. This sudden emergency was the sole and complete responsibility of the irrational acts of Mr. Fontenot under the circumstances hereinabove described. To see a truck operate in such a manner as was done by Mr. Fontenot in this case is so unusual and of such a surprising nature that it is sufficient to require more than the usual thought processes to believe what is actually seen. It goes without saying that a truck loaded with a 30,000 pound load cannot stop or be controlled with the same facility as an unloaded truck. In this case Mr. Fontenot knew or should have known of all of the reasons why he should not attempt to pass Mr. Broussard. There was no reason no reason at allfor Mr. Broussard to remotely expect that Mr. Fontenot would pass and then almost immediately thereafter stop his vehicle in the traffic lane in a curve in the highway when the other traffic lane would be blocked with an oncoming vehicle. * * *" Tr. 294-295.
A driver who has just been passed is not negligent in failing to anticipate that the passing vehicle will suddenly cut in or stop in his immediate path, nor for being too close to the vehicle which has just passed him. Felt v. Price, 240 La. 966, 126 So.2d 330; Gorum v. Southwest Cas. Ins. Co., La.App. 3 Cir., 131 So.2d 336; Reeves v. Caillouet, La.App. 1 Cir., 46 So.2d 373. A driver is not negligent for following a preceding vehicle too closely, when he maintains an interval sufficient for reasonably foreseeable hazards but when a collision nevertheless occurs because the preceding vehicle suddenly blocks his path through negligence which the driver cannot reasonably anticipate. Felt v. Price, above cited; Henderson v. Shewbart, La.App. 1 Cir., 112 So.2d 727; Soudelier v. Johnson, La. App. 1 Cir., 95 So.2d 39.
Quantum.
In addition to $4,280.80 special damages (medical expenses, property damage, proven pecuniary loss of earnings), the plaintiff was awarded $15,000 for pain, suffering, and permanent disability. The special damages are substantiated by the record and are not seriously questioned by either party. But the appellants contend that the $15,000 award for general damages is excessive, while by answer to the appeal the plaintiff-appellee prays that such award be increased.
The plaintiff, a 59-year-old self-employed trucker, was severely injured in the accident. He was pinned inside the cab of *374 his truck and suffered severe pain. As a result of the accident, tendons in his right shoulder were completely torn, and his left leg, ankle, and foot were fractured; the tip of a finger of his left hand was also torn off. During the subsequent surgery and medical treatment, including the wearing of casts, over the next two months he suffered moderately severe pain. The plaintiff was totally disabled from performing any work for ten months after the accident and suffered mild pain during some of that time.
As a residual from the injuries, the uncontradicted medical testimony shows that the plaintiff has a 25-33% permanent partial disability of the right arm and a 25% permanent partial disability of the left leg, by reason of which the plaintiff will suffer some pain and limitation in the use of these members for the remainder of his life, nor can he now perform work requiring him to stand for any considerable length of time. The plaintiff tires easily and is physically inconvenienced in his personal life; for instance, he cannot kneel at church. He is considered now to be totally disabled from obtaining employment in hard manual labor; although, as a matter of fact, at the time of the trial he had returned to work full time in his own business, even though his activities cause him some discomfort and he is unable to perform all of the duties he used to perform before the accident.
Considering the serious and very painful injuries sustained at the time of the accident, the rather protracted and painful period needed for recovery, and, especially, the permanent partial disability and discomfort caused by the accident, the trial court's award of $15,000 for pain, suffering, and permanent disability is, in our opinion, neither manifestly excessive nor manifestly insufficient under the jurisprudence. See, e.g., awards in: Fullilove v. United States Casualty Co., La.App. 2 Cir., 129 So.2d 816, 819; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639; Matherne v. Crowther, La.App. 1 Cir., 96 So.2d 89; Girouard v. Houston Fire & Cas. Ins. Co., La.App. 1 Cir., 85 So.2d 664.
The cases cited by the able counsel for the appellants to justify a lower award concern less serious and/or less painful injuries (Dickson v. Travelers Ins. Co., La.App. Orl., 119 So.2d 160; McDaniel v. Walker, La.App. 2 Cir., 111 So.2d 209, cf., "It does not appear that plaintiff is seriously handicapped," 111 So.2d 213) or an instance where it was noted that the plaintiff did not answer the appeal to seek a greater amount (Treadaway v. Marphis, La.App. Orl., 73 So.2d 215). In any event, we conclude that the trial court's award is justified by the record and is in general uniformity with the awards in the decisions cited in the preceding paragraph.
Decree.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs to be paid by the defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.