46 So.2d 373 (1950)
REEVES et al.
v.
CAILLOUET et al.
No. 3251.
Court of Appeal of Louisiana, First Circuit.
May 15, 1950.
*374 Porteous & Johnson, New Orelans, Louis B. Porterie, New Orleans, for appellants.
Ellender & Wright, Houma, for appellees.
FRUGE, Judge Ad Hoc.
This is an action for damages instituted by Mr. and Mrs. Clyde Reeves against Charles J. Caillouet, Shirley Folse and The Eagle Indemnity Company in the sum of Two Thousand Nine Hundred Eighteen and 22/100 ($2,918.22) Dollars.
The plaintiffs allege that on March 1, 1949, they were driving easterly from the City of Houma to New Orleans, Louisiana, on U. S. Highway 90 and that while traveling at a moderate rate of speed in the vicinity of a place known as Hollywood Inn which is approximately four miles east of Houma, Louisiana, their automobile was passed by Ford soft-drink truck, traveling in the same direction, but at a rate of speed considerably faster, said truck being owned by the defendant, Caillouet, and being driven by the defendant, Folse, and covered with public liability and property damage with the insurance company known as The Eagle Indemnity Company. The plaintiff had actually named The Glove Indemnity Company in the petition as the insurer, but it was later stipulated and agreed to that The Eagle Indemnity Company was the insurance carrier and was substituted for the Globe Indemnity Company. The plaintiffs further allege that the aforementioned truck, within a short distance after having passed plaintiff's automobile stopped suddenly on the pavement without warning and that Mr. Reeves, who was driving his automobile, attempted to pass on the left of said truck, but when his line of vision was such that he could not see the left side thereof, he noticed a vehicle coming in the opposite direction and in its proper lane of traffic and therefore he was forced to cut back on the right side of the paved highway and in cutting back he came into contact with the left rear portion of the parked truck owned by the defendant Caillouet and operated by the defendant Folse.
The defendants filed an answer of general denial and alleged that the accident was caused solely by the negligence of the plaintiff, Clyde Reeves, the driver of the automobile in that he was driving too closely upon defendant's truck and at too fast a rate of speed, particularly when the defendant driver gave a proper hand signal before stopping, and further alleged that the plaintiff driver was not looking where he was going, and hence, caused the accident through said negligence. In the alternative the defendants contend that both Mr. and Mrs. Clyde Reeves were guilty of contributory negligence. They allege that as to Clyde Reeves, he was negligent in following the defendant vehicle at too close a distance, in failing to keep a proper lookout for the hand signals of the driver of the defendant vehicle, and in failing to heed the warning and stop sign of defendant's vehicle. As to the negligence of Mrs. Reeves, the defendants contend that she distracted her husband's attention by talking to him, and by allowing her husband, *375 without objection, to follow too closely to the defendant's truck.
The plaintiff, Clyde Reeves, claimed damages in the sum of $918.22, $500.00 of which represents physical injuries, pain and suffering, and $418.22 representing cost of the repair to the automobile and other expenses caused by the accident. Mrs. Clyde Reeves, the other plaintiff, claims $2,000.00 as damages which represents damages sustained by her from pain and suffering and physical injuries sustained as a result of the collision.
The trial court rendered judgment in favor of plaintiff, Clyde Reeves, in the amount of $768.22, and judgment in favor of Mrs. Reeves in the amount of $1,500.00 against the defendants insolido. From this judgment all the defendants have perfected an appeal and the plaintiffs have answered said appeal, praying that the judgment rendered by the lower court be amended by increasing the judgment in their favor for the full amount sued for. The evidence discloses a lot of contradicting and conflicting testimony.
The trial judge found as the true facts that the automobile of plaintiff was traveling at a rate of speed of approximately 40 miles an hour when it was passed by the defendant truck. The court also found that the truck passed them, the plaintiffs, at a speed of approximately sixty miles an hour and further found that the impact or collision occurred at a point of approximately eight hundred feet beyond the passing. The court, in appraising the conflicting evidence, stated that the actual passing by the truck took place somewhere between 700 and 800 feet from the point of impact. The lower court had the occasion to hear the testimony of all of the witnesses and this court is not inclined to change any finding of fact by the lower court unless it committed some manifest error in its fact finding.
Plaintiff's case is predicated upon the truck stopping suddenly, immediately after passing the plaintiff vehicle and for that reason plaintiff could not stop his vehicle in sufficient time to avoid running into the rear of the truck. There is evidence, and the lower court found that there was a vehicle coming in the opposite direction which prevented plaintiff from going around the soft drink truck as it stopped. Counsel for defendants allege that even if the facts as found by the lower court are true and correct, still the plaintiff, Clyde Reeves was negligent. He stated that assuming the truck stopped as suddenly as is possible, the stopping would have commenced at a point of 600 feet beyond the point of passing the plaintiff automobile because as shown by the charts which were introduced in evidence a passenger vehicle on a dry concrete surface requires 197 feet to stop. The plaintiff vehicle was found to be going at 40 miles an hour and the defendant vehicle at 60 miles per hour. The difference in their speed is 20 miles an hour and at 20 miles an hour a vehicle travels 29 feet per second. Therefore the gap between the two vehicles would have continued to widen itself at the rate of 29 feet per second. The defendant truck traveling 600 feet at 60 miles per hour traveled 88 feet per second and therefore it would take the truck 6.82 seconds to travel the 600 feet from the point of passing to the point when it would start commencing to stop. And, if in every second after the passing the gap is widening at 29 feet per second, at the end of the 6.82 seconds the gap would be 197.82 feet between the vehicles at the time that the lead vehicle, which is the truck, applied its brakes suddenly. The defendants contend therefore that the following passenger automobile in good mechanical condition and lighter, traveling at a speed of 40 miles per hour could fail to avoid the collision when its stopping distance, including reaction time, is only 126 feet on dry pavement and 171 feet on wet pavement as shown by the charts which were introduced in evidence.
The defense has set forth an ingenious argument as stated in the afore paragraph. However, the defense has failed to note that when the truck, being driven by one of the defendants passed the plaintiff automobile, said passing was an indication to the driver of the automobile that he was not intending to stop the truck immediately. It was natural for the driver of the automobile, the plaintiff to suppose that the *376 truck was not going to stop within seven or eight hundred feet after it had passed him. Even as to a following driver, the court had this to say in the case of Hill v. Knight, La.App., 163 So. 727, 729; "We recognize and approve the rule of law that a following driver should drive at such a speed and maintain such an interval that he can avoid collision with the leading car, under circumstances which should reasonably be anticipated by him. We do not think the established facts in the instant case called for any anticipation on the part of plaintiff of the gross negligence of defendant's driver in abruptly stopping his truck, without any signal or conduct suggesting such action or any apparent circumstance calling for it."
It is true that the well recognized rule of law is that a motorist following another automobile must maintain such speed and such distance from the lead automobile as to be able to meet the usual and ordinary movements of an automobile using a highway. See Cottone v. Jones, La.App., 7 So.2d 401. However, in the instant case we find that the plaintiff automobile was not what we might consider a following automobile but an automobile which had just been passed by the truck which was driven by one of the defendant's, owned by one of the defendant's and insured by one of the defendant's. It is reasonable that the plaintiff, when driving this automobile, and driving at a speed of approximately 40 miles an hour did not anticipate the truck immediately stopping. Further, plaintiff states in his testimony that he attempted to pass the truck on the left, and when his line of vision was such that he could see that his left of the highway was occupied by another automobile traveling in the opposite direction and in its lane of traffic, he did what any driver would do under the circumstances, that is, attempt to go back on the right side of the highway in order to avoid a headon collision. The lower court found that there was an automobile coming in the opposite direction and as stated before this court is not inclined to change any finding of fact of the lower court.
In the case of Adams v. Morgan et al., La.App., 173 So. 540, 542, the court said: "The best and safest rule which it seems possible for the governing authorities and the courts to have formulated is the one which requires the driver of the car following another to maintain such speed and such distance from the lead car as to be able to meet the usual and ordinary movements of a car using the highway. Such in effect is the provision in our own State Highway Regulatory Act, Rule 8(a), section 3 of Act No. 21 of 1932. Whilst he is expected to be prudent in following another car, the driver of the car in the rear can anticipate a reasonable observance of the rules of the road and of driving, by the driver of the car ahead of him." (Italics ours).
This court is of the opinion that the plaintiff, Clyde Reeves, was suddenly placed in an emergency by the stopping of the truck and was compelled to act instantly to avoid injury. He was not guilty of negligence because he made a choice as any other person of ordinary prudence placed in the same position might make, that is, he first tried to avoid hitting the stopped truck by passing said truck in the left lane of traffic, and when he saw an oncoming automobile he was forced to turn onto his right lane of traffic and was unable to stop the automobile he was driving before he hit the rear end of the truck.
In this case the driver of the truck had just passed the plaintiff automobile. He knew that the automobile was right behind him and therefore this Court is of the opinion that he should be required to exercise greater care and caution than if he had had no previous knowledge of the car being behind him. If this automobile being driven by the plaintiff and being ridden in by the other plaintiff had been following the truck all of the time, then in that case the driver would not have had the knowledge of what was coming directly behind him, and the degree of care to be exercised by him might have been lesser. However, since he had just traversed this automobile occupied by the plaintiffs, and then as found to be a fact by the lower court, he suddenly stopped the truck, the Court thinks and is of the opinion that this sudden stopping of the truck immediately after he had passed the plaintiff car was *377 negligence on his part, and the proximate cause of the accident.
Since this Court has found the proximate cause of the accident was the negligence of the driver, namely Shirley Folse, one of the defendants of the truck and that the plaintiff, Clyde Reeves, the driver of the automobile was not guilty of any negligence, then necessarily the defendant's contention as to the negligence of Mrs. Reeves, which alleged to be that she distracted her husband's attention by talking to him, and by allowing her husband without objection to follow too closely to defendant's truck must necessarily fall also.
The only remaining question is that of quantum of damages to be allowed each plaintiff. The lower court awarded the plaintiff, Clyde Reeves the sum of Seven Hundred Sixty-eight and 22/100 ($768.22) Dollars. The sum of Four Hundred Eighteen and 22/100 ($418.22) was for the cost of repair of plaintiff's automobile and other expenses actually incurred by the plaintiff Clyde Reeves resulting from the accident. He was awarded the sum of Three Hundred Fifty and No/100 ($350.00) Dollars for his physical injuries, pain, suffering and anguish resulting from the accident. Careful examination of the record has served to convince us that the award, under the facts established, is neither excessive nor inadequate. The plaintiff, Mrs. Clyde Reeves sought damages in the amount of Two Thousand and No/100 ($2,000.00) Dollars. The Lower Court allowed her Fifteen Hundred and No/100 ($1500.00) Dollars. An examination of the record discloses that Mrs. Reeves suffered a sprain of her right ankle, severe with moderate to severe wrenching or tearing of medial and lateral supporting ligaments and contusions of the chest. It was shown that she remained in a physician's care for only a very short time. This Court has been more liberal in recent years in allowing awards to plaintiffs for damages because of the decreased purchasing power of the dollar. Nonetheless we believe that a quantum of One Thousand and No/100 ($1,000.00) Dollars is sufficient for the pain, suffering and inconvenience of the plaintiff, Mrs. Clyde Reeves.
We take the liberty of quoting excerpts from the learned trial judge's reasons for judgment: "For example, styles regulate the height of heels on women's shoes. No woman wants to be out of style. While my own opinion is that only one woman out of twenty has ankles with eye appeal in high heel shoes, and the appearance of most suffers some detraction because of the wobbly stride high heels induce, nevertheless one's pride is involved when styles dictate that it is de rigeur to wear high heel shoes on certain occasions, and one's pride and vanity necessarily suffer when one cannot comply with customs and practices. While the percentages indicate that Mrs. Reeves may fall within the group of nineteen referred to above, the circumstance cannot in the slightest degree affect a normal desire to be "in style". Consequently, she will be deprived of the pleasure of being in style, and the mortification she must bear seems to me to be a part of the injury that she suffered and still suffers."
We agree fully with the trial judge, except that we do not attach as much importance to her "mortification".
For the reasons assigned, the judgment appealed from is amended by decreasing the amount of judgment in favor of plaintiff, Mrs. Clyde Reeves, to the sum of One Thousand and No/100 ($1,000.00) Dollars, and as amended the judgment is affirmed at appellants costs.