McCALEB, Justice.
This- is a suit for personal injuries and property damage sustained in an automobile collision. The judge of the district court, after hearing the evidence, rejected plaintiff’s demand and the Court of Appeal affirmed the judgment. See 40 So.2d 673. We granted certiorari.
The accident occurred on Highway 78, a. winding black topped road paralleling the right descending bank of Bayou Lafourche, at about 7 o’clock on the morning of May 26, 1947. Plaintiff was driving his Chevrolet car in the direction of Larose and the main defendant, one Dupuy, operating a large lumber truck with trailer attached, was heading south in the opposite direction or towards Golden Meadow. The black topped portion of the highway is 18 feet in width and has gravelled shoulders on each side. The collision took place at the entrance (facing south) of a long, gradual curve to the right which is preceded by a straight road for a distance of approximately 500 feet. Plaintiff was travelling northward in this curve and, just as he neared the. end of it and was passing Dupuy’s truck and trailer (which was being driven in the opposite direction), the left side of his car, from the front door to the rear, received a glancing or scraping blow from the left side (from middle to rear end) of the large trailer. After the collision, plaintiff’s car continued forward on his right or proper side of the road and came to rest thereon about 300 feet from the point of contact. Dupuy’s truck and trailer travelled about 95 feet before it came to a stop. As a result of the impact, plaintiff received serious and permanent injuries to his left arm, which had been resting on the left front door of his car, and his automobile was badly damaged.
The hypothesis of plaintiff’s action, in which Dupuy’s liability insurance carrier, Lumberman’s Mutual Casualty Company, has been joined as co-defendant, is that the truck-trailer was passing or just had overtaken and passed another truck driven by one Cheramie (referred to in the evidence as the Esso truck) at a time when the, vehicles were at the entrance of the curve in which the accident occurred; that the large truck and trailer (approximately 30 feet long and 8 feet wide) was unable to fully regain its side of the road, the left side and end of the trailer protruding over the middle of the highway to such an extent that he did not have sufficient room to pass. It is charged that Dupuy’s act in overtaking and passing the Esso truck at the entrance of the curve was gross negligence and in direct contravention of paragraphs (c) and (d) of Section 3, Rule 7, Title 2 of the Highway Regulatory Act No. 286 of 1938, LSA-RS 32:233, subds. C, D, which provides:
*722 “(c) The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.
“(d) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same -direction, approaching the crest of a hill or substantial grade, or upon a curve in the highway or elsewhere, where the view of the driver doing the overtaking or passing is obstructed within a distance of five hundred (500) .feet.”
Dupuy’s version of the mishap is wholly dissimilar to that of plaintiff. He denies that he was engaged in passing the Esse truck and claims that the accident resulted solely from plaintiff’s negligence; that plaintiff heedlessly used the wrong (Dupuy’s) traffic lane in rounding the curve and continued his approach until, despite emergency efforts, the collision was unavoidable.
It is readily seen, therefore, that the respective contentions of the participants in the collision are diametrically opposed, so much so, that they are irreconcilable. Thus, we are confronted at the outset with a question of fact — the correct determination of which will dispose of the controversy.[1]
The main witness in support of plaintiff’s theory is Cheramie, the driver of the Esso truck. He testified, in substance, that he is very familiar with the roadway, having driven his truck over it for many years; that, on the day in question, he was driving towards Golden Meadow at *724 a speed of 20 miles per hour; that, as he was negotiating a curve in the road approximately 500 feet north of the point of the accident, he noticed (through his rear view mirror) Dupuy’s truck approaching; that Dupuy was travelling at a speed of 30 to 35 miles per hour and that he slowed down in the rear of the Esso truck while the vehicles were still in this curve; that, after the two vehicles had completed the -first curve and were running south over the straight road (which extends 500 feet to the entrance of the curve in which the collision occurred), Dupuy overtook and passed his Esso truck at a point approximately 200 feet from the entrance of the second curve; that, after Dupuy had completely passed his truck, he continued on the left side of the road and was gradually ■returning to the right or proper side just .as the vehicles were entering the second ■curve; that, at that time, he noticed an automobile driven by a Mr. Brinsum (in which Brinsum’s wife was a passenger) ■overtaking and passing his Esso truck; that, when the Brinsum car had reached a point almost parallel with the Esso truck, he noticed plaintiff’s car coming around the bend from the opposite direction at a distance of about 100 feet from Dupuy’s truck (he says that he was unable to see plaintiff's car until it was about 100 feet away because of the presence of high grass surrounding the curve which obscured his vision) ; that Dupuy’s truck returned to its right or proper side of the road and the Brinsum car quickly squeezed in the space between the rear of Dupuy’s trailer and the front of his Esso truck but that the trailer part of Dupuy’s vehicle was not brought wholly over to the right side of the roadway ; that a portion of the trailer was projecting possibly a foot or- two into the left (or plaintiff’s) side of the road and that, when plaintiff attempted to pass, the accident occurred (in the manner in which we have indicated above).
Plaintiff’s testimony is that he was driving his car at a speed of about 40 miles per hour on the right side of the road; that, as he was rounding the curve where the accident took place, he noticed the Esso truck coming in the opposite direction; that, when he first saw it, it was “probably a couple of blocks” away; that he did not see Dupuy’s truck at that time but that, as he continued on and had reached a point very close to the place of impact, he was confronted by Dupuy’s truck on his side of the road; that, at that time, the truck was ten or fifteen feet in front of him and that there was nothing he could do to avoid the glancing blow sustained by his car.
Dupuy, in his testimony, says that he was completely on his right side of the road at the time the accident happened and that plaintiff, in rounding the curve, came into the wrong lane of travel thus making a collision inevitable, despite the fact that he swerved his truck ever to the right in an attempt to avoid contact. He states *726 that' he does not remember passing the Esso truck although he concedes that it is probable that he overtook and passed it because his truck-trailer was travelling at a much faster rate (30 to 35 miles per hour).
Dupuy’s testimony is, for the most part, corroborated by the statements of Mr. and Mrs. Brinsum, who were following the two trucks in their Plymouth car, which had overtaken and passed the Esso truck just prior to the collision. Mrs. Brinsum says that, as her husband was overtaking and passing the Esso truck, she noticed plaintiff’s car coming around the curve; that she called her husband’s attention to it and that he immediately pulled in in front of the Esso truck and behind Dupuy’s truck-trailer. She does not know whether plaintiff’s car was in its right lane or not and she did not see the accident, stating that, after their car returned to its right side of the road between the Esso truck and Dupuy’s truck-trailer, "That’s when I decided to crochet, because my husband was going slow then. He slowed down after he passed the Esso truck”.
Like his wife, Mr. Brinsum says that he did not see Dupuy’s truck-trailer pass the Esso truck. He asserts that, when he was passing the Esso truck (the Dupuy truck being ahead on the right hand side of the road), his wife (“She’s kind of a back seat driver, anyway”) directed his attention to plaintiff’s car coming around the curve; that plaintiff’s car seemed to be on the wrong side of the road; that he must have been too much to his left as, when the collision occurred, “It seemed to me he kind of brushed it” because the truck was on its right side. I
The district judge and the Court of Appeal accepted the defense testimony as the true account of the accident. This, we think, was error as the evidence satisfies us that the testimony of Cheramie portrays an accurate picture of the facts and circumstances which brought about the collision. In the first place, when we consider the location of the respective witnesses just prior to and at the time of the impact, it is manifest that Cheramie was in a much better position, by reason of the height of his truck from the ground and the slow speed at which he was travelling on the right hand side of the road, to view plaintiff and the Dupuy truck-trailer as the vehicles were negotiating the curve. In- ^ deed, it strikes us that the Brinsum car (despite Brinsum’s statement that it was not travelling more than 50 miles an hour prior to. the passing operation) was probably running at a high rate of speed (which is indicated by the testimony of Mrs. Brinsum which we have above quoted) ; that the participants therein were busily engaged in maneuvering that car in between the rear of the .truck-trailer and the Esso truck and that, in the emergency confronting them, they did not (nor were they in a position to) see all that they ventured to relate in their evidence.
*728 Moreover, it is difficult to believe that Dupuy did not remember overtaking and passing the Esso truck. It is not disputed that Cheramie was at the scene and that his truck was immediately in the rear of the Dupuy truck. In fact, Mrs. Brinsum states that there was but a short space between the rear of the Dupuy truck and the front of the Esso truck, into which her husband was able to squeeze the Plymouth car after passing the Esso truck. And, on this point, it is hard to discern why the Brinsums failed to notice that the Dupuy truck had just overtaken and passed the Esso truck at the time they overtook and passed the latter in their Plymouth. It is established by the evidence that the Esso truck was travelling at only 20 miles an hour, whereas, the Dupuy truck was admittedly going 30 to 35 miles per hour. Hence, if the latter had overtaken and passed the former some rime prior to the arrival of the Brinsum car on the scene, it is obvious that it would have been much farther in front of the Esso truck than the short space avouched by all of the witnesses.
In addition, it is patent to us that the version given by Cheramie in his testimony is' more reasonable, being in consonance with the physical facts of the case. It is shown that the curve in which the accident occurred is to the right for vehicles proceeding to the south. Therefore, if plaintiff was travelling on the left or wrong side of the road going north, as Dupuy contends, it is unlikely that the left side of his car would have collided with the left middle and rear portion - of the trailer. Under such circumstances, the contact would have been with the left front portion of the Dupuy truck-trailer, even if plaintiff would have suddenly swerved to. his right side of the road.
Conversely, Cheramie’s testimony that Dupuy, in overtaking the Esso truck, failed or was unable to 'bring the entire vehicle back to its proper side and that a part of the trailer protruded over into plaintiff’s portion of the roadway, coincides perfectly with the admitted facts that the contact between the vehicles consisted of a scraping of the left side of plaintiff’s car by the left rear portion and end of the trailer.
Being of the opinion that the testimony of Cheramie is the accurate account of the accident, Dupuy is responsible under the above quoted provisions of thfe Highway Regulatory Act, unless plaintiff was guilty of contributory negligence having causal connection with the mishap. The district judge found that plaintiff was at fault because he testified that he did not see the Dupuy truck until he was about 10 or 15 feet from it. This, the judge concluded, evidenced a failure to exercise a proper lookout because, if plaintiff had looked, he would have seen the truck when he was a much greater distance away.
*730 For our part, we do not believe that plaintiff’s statement, which is a mere estimate of space, is of such a serious nature as to warrant a finding that he was at fault. If his appraisal of the distance at which he first saw the Dupuy truck is considered in connection with his entire statement, it is not as illogical as it appears on its face for he testified that he saw the Esso truck quite a distance (probably a couple of blocks) away and explains that the reason why he did not see the Dupuy truck and trailer was because it was either in back of the Esso truck or in the act of passing it. Obviously, if the Dupuy truck was passing the Esso truck, plaintiff could not see it until he got around the curve. Of course, it seems plain that plaintiff’s testimony that he could not see the truck until it was 10 or 15 feet from him is lamentably inaccurate as it is probable that he could have and must have seen it from a greater distance. But his mistake in this respect does not necessarily show negligence on his part for there is nothing in the record to exhibit that, if he had seen it when it was a greater distance away, he could have done anything to avoid the collision which was imminent. The onus was on defendants to prove that plaintiff was at fault having causal connection with the accident. They- have failed to carry this burden and, hence, are liable for the damages plaintiff has sustained.
Remaining for disposal is the quantum of damages to which plaintiff is entitled. Since this question has not been argued or briefed in this court, we have concluded to remand the case to the Court of Appeal for the fixing of the award as was done in the recent case of Salter v. Zoder, 216 La. 769, 44 So.2d 862.
The judgments of the lower court and the Court of Appeal are annulled and set aside and it is now ordered that there be judgment in favor of plaintiff and against defendants for such sum as the Court of Appeal may find the facts of the case warrant and the matter is remanded to that court for this purpose. All costs are to be paid by defendants.
LE BLANC, J., recused.

. It may seem that, because we now find that the principal point for adjudication is a question of fact, the writ of review should not have been granted in view of the provisions of Section 2 of Act No. 191 of 1898, L.S.A.-R.S. 13:4450, which contemplates that a writ should be denied in any case where the correctness of the judgment of the Court of Appeal depends upon whether that court has rightly decided an issue of fact. But it is settled that, after a writ has been granted, we have the right, under Article 7, Section 11 of the Constitution, to decide all questions of fact as well as law with the “same power and authority in the case” as if it had been brought here by appeal. Pipes v. Gallman, 174 La. 257, 140 So. 40 and Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23. What prompted the granting of the writ of review in this ease was the conclusion of both the district judge and the Court of Appeal that, under the testimony given by Cheramie, Dupuy did not violate the provisions of paragraphs (c) and (d) of Title 2, Section 3, Rule 7 of the Highway Regulatory Act, No. 286 of 1938, because he began his passing operation while on the 500 foot straightaway, notwithstanding the fact that there was a distance of much less than 500 feet between the curve, where the accident took place, and the point where the passing operation was undertaken.