McCALEB, Justice.
Mr. and Mrs. William D. Thornton brought this suit for damages for personal injuries to Mrs. Thornton and property damages sustained by the Thornton automobile as a result of a collision between the automobile, which was being driven by Mrs. Thornton, and a van-type truck and trailer owned by F. Strauss & Son, Inc., which was being driven by its employee, Robert J. Square, while in the scope and course of his employment. Joined as a defendant with F. Strauss & Son, Inc. is its insurer, New Amsterdam Casualty Company.
The accident occurred about 4:30 p. m. on a clear day, April 8, 1958, on U. S. Highway 165, between the towns of Urania and Olla in LaSalle Parish. At the locus of the accident, U. S. Highway 165 is a straight two-lane concrete jroad, 24 feet wide, abutted by extensive level shoulders on each side. Mrs. Thornton was driving alone in a 1953 Pontiac Sedan in a northerly direction at 35 to 40 miles per hour, followed by the large Strauss truck-trailer unit of an overall length of 44 feet, supported by two single wheels in the front and six double wheels under the freight van. When this truck-trailer, which was travelling at a higher rate of speed than the Thornton car, reached the rear of the automobile, its driver, observing that the left lane of the highway was clear of oncoming traffic for some distance, proceeded to pull the large vehicle into that lane to pass the car and, while engaged in this maneuver, a sideswiping collision occurred causing the damages complained of by plaintiffs. From the photographs taken of the respective vehicles after the accident, it appears that the right front side of the large van collided with the entire left side of the automobile from front to rear and that the rear left door and side of the car was subjected to violent contact with an iron rack or tire mount located immediately below the side door of the van. This tire mount extended slightly outward- from the center of the right side of the van and was torn away from its moorings as a result of the collision.
It is plaintiffs’ contention that the driver of the Strauss truck, while engaged in the passing maneuver, negligently attempted to cut back over in the right lane before the truck and trailer had completely passed the Thornton automobile.
Defendants, on the other- hand, take the position that, as the Strauss truck was passing, Mrs. Thornton either ran her car or permitted it to sway into the left or passing lane where it struck the truck, despite the fact that the truck driver pulled over onto the left shoulder of the highway in an attempt to avoid the accident.
Mrs. Thornton and the truck driver were alone at the time of the accident and were the only eye-witnesses thereto. Mrs. Thornton’s testimony is in complete accord with plaintiffs’ contention that the accident occurred in the right-hand lane as a result *887 of the truck-driver’s negligence in reentering that lane before the large vehicle had completed the overtaking and passing operation in which it was engaged. Her version of the accident is fully supported by the evidence of State Trooper R. C. McGuffee, who arrived at the scene some 15 minutes after the collision and made a written report of his findings to the State Police. In his testimony, which was based on his report, Officer McGuffee stated that he found all of the debris resulting from the collision of the two vehicles, consisting of “ * * * dirt and glass and material * * * on the right-hand side of the highway, headed north * * * close to the center line”.
Conversely, the negro truck-driver’s testimony supports defendants’ claim that Mrs. Thornton drove over into the left lane and ran into the large truck-trailer while it was engaged in the passing maneuver. This witness avouched that he looked through his right rear-view mirror, when he was in the act of passing Mrs. Thornton’s car and saw the car veer over the line into the side of the truck-trailer. He puts it this way in his testimony:
“And then, as I was attempting to pass, I checked my mirror and I saw this car kind of creeving in, I taken off to the shoulder which I was almost on the shoulder, I taken the shoulder of the road, put my left wheels over on the shoulder of the road, and I taken a quick glance again, and it was still coming in on me, and I just went on off of the road, and at the time there was a little gravel road comes in there and when I hit this gravel road that’s where the impact hit, that’s where we met at, and as I crossed over the gravel road, my trailer creened, and I knew it was going to turn over if I’d kept going because the embankment was getting steep, so I just cut it sharp back to the right and went back on top of the highway and stopped, which I was across the highway, right across it.”
In corroboration of the truck driver’s testimony that he actually left the highway and ran on its west shoulder at or near an intersecting gravel road, defendants introduced three photographs in evidence, taken ten days after the accident, depicting the portion of the road at which the mishap occurred. These photographs exhibit numerous tire tracks on the connecting gravel road near the shoulder of the highway and also tire tracks on the left or west shoulder of the highway to the north of the intersecting road, identified by the truck driver as the tracks made by his truck and trailer on the day of the accident.
Defendants also tendered the evidence of a Mr. B. Z. Smith, who arrived on the scene soon after the accident. Mr. Smith, who was heading South in a pickup truck, estimates that he was a quarter of a mile away from the site of the accident at the time it occurred. He stated that he did not see the accident but he did observe considerable dust in the air at the place it occurred and, when the photographs offered by defendants in evidence were exhibited to him, he identified the tracks, shown in the pictures on the left shoulder of the road, as those made by the large truck-trailer.
The case was tried in the district court before a jury and, after hearing the evidence to which we have above adverted, a verdict was returned in favor of Mr. Thornton for $1,424 and in favor of Mrs. Thornton for $15,000. There was judgment in accordance with the verdict and defendants then appealed to the Court of Appeal for the Second Circuit, where the judgment was reversed and the suit dismissed. See Thornton vs. F. Strauss & Son, Inc., La.App., 113 So.2d 48.
In holding the verdict in plaintiffs’ favor erroneous, the Court of Appeal rejected the testimony of plaintiffs’ witness, Officer McGuffee, declaring that his assertion that all of the debris resulting from the collision was found on the right side of the highway “ * * * is completely incredible in *888 consideration of the badly crushed and battered left side of the Thornton car, and the fact that it continued across the west side of the highway and out upon the shoulder before it came to a stop”. Additionally, the court noted that the officer’s testimony was grossly erroneous as to the absence of tire marks of the truck on the west shoulder of the highway north of the road intersection because the photographs taken by defendants some ten days following the accident show the presence of such tire marks, which were attested to by the testimony of the track driver and the witness, Smith. The court further concluded that, after a thorough consideration of the case, plaintiffs failed to establish the negligence of the truck driver as a proximate cause of the accident by anything approaching a preponderance of evidence.
Following the finality of this judgment, plaintiffs applied here for certiorari. The writs were granted and the case has been argued and submitted for our decision.
It is seen from the foregoing statement that the case presents for determination primarily a single question of fact, i. e., (as stated by counsel for plaintiff in their brief) “ * * * did the Strauss truck, after undertaking to pass the Thornton car, cut back too soon to the right, crossing the center stripe, thereby colliding with the Thornton car in its proper lane of, travel, or did the Thornton car, while the truck was passing it, turn to the left across the center stripe and run into the side of the truck”.
It is for this reason that counsel for defendants, at the outset of their argument and brief, suggest that the writ of review should be recalled. Counsel acknowledge this Court’s power and authority to con-, sider factual questions on writs of review but they contend that it is improvident for us to exercise this power since, in our observance of the provisions of Section 2 of Act 191 of 1898, now R.S. 13:4450, we do not ordinarily grant a writ to review a factual issue alone.
This contention cannot be sustained. It is well settled that whenever a writ of review is granted by this Court "we are obliged to decide the questions of fact as well as the questions of law that are tendered for decision; and to that end it is declared in the Constitution, Article 7, Section 11, that we shall have 'the same power and authority in the case’ as if it had come here directly by appeal.” (Emphasis ours.) Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23, 27, citing Pipes v. Gallman, 174 La. 257, 140 So. 40. See also Savoie v. Dupuy, 218 La. 717, 50 So.2d 817.
Furthermore, we did not, as defendants’ counsel apparently presume, grant the writ herein simply to review an alleged erroneous factual finding of the Court of Appeal. The writ was granted because we entertained doubt as to the legal verity of the Court of Appeal’s statement that plaintiffs carried the burden of proof to establish negligence of the operator of the overtaking vehicle by a preponderance of evidence in a suit like this, in view of, the provisions of R.S. 32:233, Paragraphs A, C and F, which may well indicate a legislative intent to fix a prima facie case of responsibility upon all overtaking and passing motor vehicle drivers, who are involved in accidents with the overtaken vehicles, as well as collisions with vehicles approaching from the opposite direction.[1]
*889 Be this as it may, we do not find it essential under the facts of this case to determine this question of law, for we are convinced that the proof adduced by plaintiffs clearly preponderates over defendants’ version of the accident.
Initially, we think that a mere statement of the accident discloses that Mrs. Thornton’s testimony as to the way it happened is more concordant with the reasonable probabilities of the case than that of the truck driver. To sustain his version requires belief that Mrs. Thornton, a 55 year-old lady who had been driving for many years, either thru the grossest sort of inattention or sudden mental or physical collapse, veered her car into the passing lane and sideswiped the heavy and cumbersome truck and van while fully aware (according to her statement) that it was abreast of her car and engaged in passing it. This does not appear likely to us in the absence of convincing evidence to the contrary and we do not place the truck driver’s testimony in that category, as will be hereinafter shown.
Meanwhile, we hasten to say that we have examined Mrs. Thornton’s evidence with care and find it reliable and trustworthy. She related that she noticed the large vehicle behind her and kept it in sight, thru her rear-view mirror, while it pulled over to the left lane to overtake her; that, after the cab of the truck passed her car, the large van was driven over and into the right lane where it crashed into and along the left side of the automobile; that the blow knocked her unconscious and that she immediately lost control of her car.
The pictures in evidence of the damaged automobile confirm Mrs. Thornton’s testimony, for a view of the front fender of the car definitely exhibits a sideswiping impact from an object, which approached from the left rear, as it is scratched and dented from the rear to the front and the left front bumper is bent outwards and towards the right. Further, to the rear of the left side of the vehicle, the photographs show the sprung, broken left door which is bent inward towards the rear seat. This damage, which was undoubtedly caused by the car being struck by the tire mount situated on the right side of the trailer, could not have occurred if Mrs. Thornton had turned her car into the truck, as avouched by the driver.
In addition, we perceive no justifiable ground for disbelieving the evidence of Trooper McGuffee. So far as the record shows, he was a disinterested witness, who testified only as to the findings made by him, which were recorded in his police report. We do not consider incredible his assertion that all the debris resulting from the collision was found on the right side of the highway. This statement was not contradicted by any witness in the case. In the absence of countervailing proof, we have no right to deduce that the evidence is false.
The fact that McGuffee refused to say that the tire prints on the road’s shoulder, shown in the photographs produced by defendants, were those of the truck involved in the accident does not, in our opinion, weaken the genuineness of his evidence. Conversely, since the photographs were not taken until some ten days following the *890 accident, and since the highway is admittedly a heavily travelled one, it is unlikely that anyone who was not at the scene when the accident occurred would he willing to say with certainty that these were the same tracks to which the truck driver testified. And this, even though defendants’ witness, Smith, identified the tracks shown in the photographs as those of the truck. McGuf-fee said in his testimony that he found tracks made by the truck on the left shoulder to the north of the intersecting gravel road. However, as aforesaid, he would not identify the tracks shown in the defendants’ photographs as the tire tracks he saw. Even if it be assumed that he was mistaken in this, the circumstance is of small consequence and does not seriously affect McGuffee’s veracity, for no one disputes the fact that the left wheels of the truck rolled on some part of the left shoulder of the road sometime during the passing operation, either before or after the accident.
The truck driver’s statement, that he saw the Thornton car “creeving in” and over towards his passing truck and trailer by glancing into his right rear-view mirror, not for the purpose of ascertaining whether his truck-trailer had cleared sufficiently for him to return to the right side of the highway ahead of it, but only because it was his custom to check on vehicles overtaken by him during the passing operation, is not convincing. It is singular, to say the least, that one engaged in a passing maneuver would focus his attention on the vehicle overtaken and passed instead of the road ahead, except to ascertain whether it was safe to return to his proper side of the highway. But the truck driver in this case even goes further for he says that, when he saw the Thornton car “creeving in”, he took another glance and, seeing the car veering further into the passing lane, he swerved completely off the roadway on the shoulder of the road in order to escape an impact, but to no avail. In analyzing this testimony, it is to be wondered why the driver did not stop on the shoulder of the road, where he had driven his truck after the impact, instead of coming finally to a stop, straddling the concrete with the front portion of the truck facing to the east, entirely in the right lane in which Mrs. Thornton had been travelling. But, here again, the witness offers an explanation for this unusual circumstance stating that he was afraid that the large van-trailer would topple over when it ran over the left shoulder of the road (which was level with the highway) so he pulled sharply to his right and back onto the pavement to avoid an impact.
We find it difficult to follow the various maneuvers and measures adopted by the truck driver. Suffice it to say that we, like the jury who heard and saw this witness, are not favorably impressed by this evidence.
We conclude that the accident was caused solely and entirely by the negligence of the truck driver and, therefore, defendants are liable to plaintiffs for the damages sustained by them. In view of the conclusion reached, the Court of Appeal did not undertake a consideration of the amounts awarded to plaintiff by the verdict of the jury. Accordingly, under the well-established policy of this Court, the case will be remanded to that court for consideration of the quantum of damages in the case. See Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817; White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Herget v. Saucier, 223 La. 938, 67 So.2d 543; Jackson v. Jones, 224 La. 403, 69 So.2d 729, at page 733; Rizley v. Cutrer, 232 La. 655, 95 So.2d 139, at page 143.
For the reasons assigned, the judgment of the Court of Appeal reversing the judgment of the district court is annulled and set aside. It is now ordered that the judgment of the district court, insofar as it holds defendants liable for the damages sustained by plaintiffs, is approved and affirmed and the case is remanded to the Court of Appeal for the sole purpose of review *891 ing and determining the correctness of the damages awarded plaintiffs by the jury in the district court.
The costs of these proceedings are to be paid by defendants.

. R.S. 32:233 was formerly Rule 7 of the Rules of the Road of the Highway Regulatory Act of 1938, which were incorporated in the Revised Statutes under Chapter 1 of Title 32 dealing with traffic regulation. Section 233 pertains to the overtaking and passing of vehicles on the highways of the State and Paragraphs A, C and P of the Section, which we have referred to above, read as follows :
“A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.
* * * * *
“C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing *889 another vehicle traveling in the same direction, unless such left side is cloaz-ly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing. (Emphasis ours.)

“E. The driver of a vehicle who has been given adequate warnings by an overtaking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it has been completely overtaken and passed. Nothing herein shall mitigate agamst the provisions for prima facie responsibility in Subsection G. (Emphasis ours.)”