126 So.2d 330

Arthur F. FELT, Jr.

v.

Earl PRICE et al.

No. 44599.

Jan. 9, 1961.

Rehearing Denied Feb. 15, 1961.

Sessions, Fishman, Rosenson & Snellings, Cicero C. Sessions, New Orleans, for defendant, plaintiff in reconvention and petitioner.

Robert G. Polack, Dufour, St. Paul, Levy & Marx, Leonard B. Levy, William M. Lucas, Jr., Adams & Reese, St. Clair Adams, Jr., Christovich & Kearney, A. R. Christovich, Jr., New Orleans, for defendants and respondents.

McCALEB, Justice.

Plaintiff brought this suit to recover property damages ($648.25) to his automobile and $250 damages for personal injuries sustained by his minor son as a result of a series of rear-end collisions which occurred at about 11:00 a. m. on November 26, 1955 on the northbound lane of Highway 61, known as the Airline Highway. The defendants in the case are Raymond Hodson, whose automobile, being driven by his minor son, Raymond Hodson, Jr., ran or was knocked into the rear of plaintiff's car;

Vincent Adams, whose car ran into the rear of the Hodson car and propelled it forward into the rear of plaintiff's car and Earl Price, whose car ran into the rear of the Adams car, causing it to again strike the rear of the Hodson car, which was propelled again into the rear of plaintiff's car.

Plaintiff asserts that he was driving his car at a speed of 40 miles per hour when he was compelled to come to a sudden stop because of a traffic jam attributable to the occurrence of a collision approximately one mile north of the accident involved herein and that the damage to his car and the injuries sustained by his minor son resulted exclusively from the combined negligence of the operators of the Hodson, Adams and Price cars, who were driving too closely to each other, failing to keep a proper lookout and did not have their automobiles under control.

Each defendant denied negligence in his answer and contended that the accident was caused by plaintiff's gross negligence, in that he had engaged in a passing maneuver at a high speed just prior to the mishap and suddenly cut back into his proper lane in front of their cars at a time when all preceding traffic in the vicinity was being brought to a stop. In the alternative, all defendants pleaded that plaintiff was guilty of contributory negligence barring his recovery.

The defendant, Hodson, additionally set forth that the accident was due to plaintiff's fault and the concurrent negligence of Adams, in striking the Hodson car, and Price, in striking the Adams car and causing it to strike the Hodson car. Hodson also filed a reconventional demand to recover a large sum ($124,815.84) in damages for the personal injuries sustained by his son, including property damages, medical expenses, loss of his son's earnings and his own mental suffering resulting from his son's injuries.

After a hearing on these issues, the district judge concluded that all litigants were guilty of fault having causal connection with the accident. He accordingly denied plaintiff's claim for property damages but rendered judgment in his favor for $250 against the defendants, in solido, for the damages sustained by plaintiff's son, holding (conformably with the jurisprudence) that plaintiff's negligence could not be imputed to the minor, a guest passenger in the automobile. The reconventional demand of Hodson was also dismissed. Plaintiff and all defendants then appealed to the Court of Appeal for the Parish of Orleans (now Fourth Circuit) where the judgment was affirmed. See Felt v. Price, 109 So.2d 807. Hodson applied for and was granted certiorari. Since Hodson is the only complainant here, our review of the case is necessarily limited to a consideration of his son's negligence and, if it is found that he was free from fault, whether the damages claimed by Hodson in recon-

vention on his own behalf and for the account of his son are attributable either in whole or in part to plaintiff's negligence.

At the time and place of the accident, two miles south of Gonzales and three miles north of Sorrento on the morning of the 1955 Tulane-L.S.U. football game, the Airline Highway consisted of only two lanes and the traffic was exceptionally heavy on the northbound lane, which runs from New Orleans to Baton Rouge. Hodson, Jr., Adams, one Foret and one Folse were the drivers of four automobiles transporting a party of friends from Raceland, Louisiana to Baton Rouge to witness the game. Hodson, Jr. drove the lead car followed by Adams, who was followed by the defendant Price (who was not a member of the football party), his car being followed by the Foret car which was, in turn, followed by the Folse car.[1] Thus, there were at least five, and probably six, cars (see Footnote No. 1) traveling on the northbound lane of the highway in a group shortly before the happening of the accident. These cars were separated, according to the testimony of their drivers and occupants, at different distances varying from 25 to 30 feet to three car lengths (approximately 60 feet). The lead car, driven by Hodson, Jr. was between 200 to 300 feet behind a Cadillac operated by a Mr. Clarence H. Wagner, who testified for the plaintiff. The Wagner car was being driven at a speed of 40 to 45 miles per hour and all the automobiles comprising the group led by Hodson, Jr. were travelling at approximately the same speed, 50 to 60 miles per hour. In view of the speed of the cars following Wagner, it is obvious that they were steadily diminishing the space between his car and the Hodson car and that the latter would have shortly overtaken him. However, while the Wagner car was still 200 to 300 feet ahead of the Hodson car plaintiff, who was also driving to Baton Rouge to attend the game, accompanied by his wife and two minor children, came from the rear of the group of five or six automobiles led by Hodson, Jr., overtook and proceeded to pass them and pulled back into the northbound lane in front of the Hodson car.

Plaintiff testified that he was travelling at about 40 miles per hour; that he increased his speed to approximately 55 miles per hour during the passing operation; that there were no oncoming vehicles in the southbound lane which might have interfered with this maneuver and that, after he had overtaken and passed the lead Hodson car by about four car lengths, he returned to the northbound lane in the space separating the Wagner car from the Hodson car, which extended some 200 feet or more; that, having safely passed the group

1. However, Folse, in his testimony, says that there was a 1955 Buick in line between his car and the Foret car.

of cars, he followed the Wagner car for several blocks or, possibly, even a mile when he, simultaneously with the driver of the Wagner car and the other automobiles preceding Wagner, was required to come to an abrupt stop as the consequence of a traffic jam which was caused by a collision occurring a mile or so ahead; that he successfully applied his brakes and came to a stop on the northbound lane to the rear of the Wagner car and that, within a split second, the rear of his car was struck by the front of the Hodson car, this impact being shortly followed by a second jolt resulting from the Hodson car being struck from the rear by another car following it.

Plaintiff's account of the accident is corroborated substantially by the testimony of his wife. And his statement that he had driven in the northbound lane for several blocks or, possibly a mile after he completed the passing operation is supported by the evidence of Mr. Wagner, who declares that he saw (through his rear view mirror) the Felt car following him for several minutes, or for approximately a mile and a half before the occurrence of the accident.

On the other hand, the testimony of Hodson, Jr., and the three occupants of his car, Adams and the three occupants of his car, Price, Foret and Folse, portray an entirely different state of facts as to the manner in which the accident happened. The defendants and their witnesses are in general agreement that the five or six cars comprising the group were traveling at a speed of 50 to 60 miles per hour and they state that plaintiff passed them at a speed of 70 miles per hour or more which, of course, would have been most likely if the automobiles comprising the group were travelling at the above estimated speed. These witnesses further avouch that the series of rear-end collisions occurred simultaneously and within a matter of split seconds from the time plaintiff completed the overtaking of the five or six automobiles and pulled over into the open space separating the Hodson car from the Wagner car. Some of them state that, when plaintiff returned to the northbound lane and was required to come to a stop because of the traffic jam ahead, his car was "skipping, bouncing and shimmying" across the highway as a consequence of his attempt to reduce its high speed and bring it to an abrupt stop short of a collision with the Wagner car which was immediately in front of him.

The district judge concluded that Felt had been driving his car at an excessive speed and that he was guilty of negligence in attempting the passing maneuver under the traffic conditions obtaining on the day of the accident. But the judge was

also of the view that the defendants were likewise guilty of negligence in that they were driving too fast and too closely to each other and that, considering the heavy traffic, they could not bring their cars to an adequate stop in the event of a sudden emergency.

The Court of Appeal agreed with these findings, it being specifically held that plaintiff was continuously negligent throughout the passing operation up to the moment of the accident and that the defendants were also at fault in view of the close proximity of their cars to each other and the speed at which they were being operated.

A careful review of the record has convinced us of the correctness of the finding of the district judge and the Court of Appeal that plaintiff was negligent in engaging in the passing maneuver at a high rate of speed when he should have foreseen, in view of the attendant traffic conditions, that it was dangerous to do so.

In addition, we find no error in the ruling of the trial judge and the Court of Appeal that Adams and Price were guilty of negligence in driving too closely to the cars in front of them at a speed of 50 to 60 miles per hour for it was unlikely, as demonstrated by the occurrence of the accident, that they could stop their cars with-

in sufficient time and space to avoid the rear-end collisions. Accordingly, it was proper to conclude that these drivers violated Section 234A of the Highway Regulatory Act.[2]

However, it is difficult to perceive why the lower courts placed Hodson, Jr. in the same category with Adams and Price and concluded that he was negligent because he was driving too fast and within close proximity to the other vehicles involved in the accident. This finding overlooks the fact that the Hodson car, being the lead car of the group of overtaken automobiles, was 200 to 300 feet behind the Wagner car at the time plaintiff started his hazardous passing operation. Surely, it cannot properly be said that it was negligence for Hodson, Jr. to drive at a speed of 55 miles per hour on a main artery of travel on which the speed limit is 60 miles per hour (see R.S. 32:223), when the nearest traffic preceding him was 200 to 300 feet away, as shown by the facts of this case. Indeed, counsel for plaintiff, both in oral argument and in brief, acknowledge impliedly, if not expressly, that Hodson, Jr. was without fault, their main contention being that plaintiff was likewise without fault and that the accident occurred as the result of the negligence of Adams and Price in following the Hodson car too closely and at a

2. R.S. 32:234A declares: "The driver of a motor vehicle shall not follow another vehicle more closely as is reasonable and prudent, having due regard to the safety of such vehicle and the traffic upon and condition of the highway."

speed at which they could not bring their cars to a stop in case of a sudden emergency.

Counsel's argument, with respect to plaintiff's freedom from fault is, of course, founded on plaintiff's testimony and that of his witnesses. But that evidence, as noted above, does not preponderate and we agree with the findings of the district judge and the Court of Appeal that plaintiff was operating his car recklessly and at a high rate of speed when he engaged in the passing maneuver and that this negligent operation continued when he cut back into the northbound lane of the highway and was forced to come to an abrupt stop by reason of the traffic jam ahead. Under the conditions existing on the day of the accident, plaintiff's passing of the five or six cars could not gain him any appreciable advantage in time and was fraught with danger and this is so even though there was no southbound traffic within the immediate vicinity in the passing lane and even though it appeared to plaintiff that there was an adequate space between the Hodson car and the Wagner car for him to occupy upon his return to the northbound lane. The point is that plaintiff should have anticipated that the space between the Hodson car and the Wagner car was appreciably diminishing by reason of the slow speed at which the Wagner car was traveling and he could not be reasonably sure that the space would be sufficient for his safe occupancy at the time he was able to complete the passing operation. At all events, he became prima facie responsible for the results of the overtaking and passing maneuver, as Subsections A, C and F of R.S. 32:233 provide that:

"A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

\*     \*     \*     \*     \*     \*

"C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. *Whenever an accident occurs under such circumstances,*[3] *the responsibility therefor*

3. The "circumstances" to which the statute refers could be construed literally to mean situations in which the overtaking and passing is attempted when the road ahead is not clear of oncoming vehicles. But, as indicated in our recent opinion in Thornton v. F. Strauss & Sons, Inc., 240 La. 455, 123 So.2d 885, we do not think a fair reading of R.S. 32:233C justifies such a narrow interpretation. Indeed, when the provisions of Subsection C are read in connection with

*shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.*

\* \* \* \* \* \*

"F. The driver of a vehicle who has been given adequate warnings by an overtaking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it. has been completely overtaken and passed. *Nothing herein shall mitigate against the provisions for prima facie responsibility in Subsection C."* (Italics ours.)

Thus, the mere happening of the accident cast upon plaintiff the burden of establishing his freedom from fault. His efforts to meet this burden of testimony to the effect that he had completed the overtaking operation, having returned to his proper lane of travel a few moments (or minutes) before all of the northbound traffic within the vicinity was presented with an emergency emanating from the accident about a mile above, is not adequate to overcome the strong testimony produced by the defend-

---

Subsections A and F, we think it manifests a legislative intent to impose a prima facie case of responsibility upon all overtaking and passing motor vehicle drivers, who are involved in accidents with overtaken vehicles, as well as collisions with vehicles approaching from the opposite direction.

4. While it is well established that a motorist following other traffic must keep his automobile at a safe distance behind 'so as to enable him to stop it in a sud-

---

ants that plaintiff's passing maneuver and return to the northbound lane produced the emergency and that his negligence in this respect continued up to the moment of the impact.[4]

■ Counsel further suggest that, even if we conclude that plaintiff was negligent, Hodson is not entitled to recover on the reconventional demand for the reason that plaintiff's negligence caused no damage either to Hodson's·son or to the Hodson automobile. This contention is apparently premised on the fact (if it be a fact) that the Hodson automobile was struck by the Adams car before it made contact with plaintiff's car and received another blow as a result of Price's negligence when his car struck the Adams car which, in turn, struck the Hodson car a second time. Thus, it is said that the case is parallel in this respect to Billiot v. Noble Drilling Corporation, 236 La. 793, 109 So.2d 96.

We find no merit in this proposition. Since we have concluded that the passing maneuver executed by plaintiff created an emergency which rendered the driving of

---

den emergency, this rule is without application where the emergency is created by the negligence of the forward motorist, as in a case like this, where the forward motorist gains his position as such in an overtaking operation and, in so doing, creates the sudden emergency. See Reeves v. Caillouet, La.App., 46 So. 2d 373, and Max Barnett Furniture Co. v. Barrosse, La.App., 70 So.2d 886 and cases there cited.

Hodson and the traffic following him more perilous, plaintiff's negligence had causal connection with the accident. Hence, it matters not whether the contact between plaintiff's car and the Hodson car emanated from the blow received by the Adams and Price cars or whether Hodson would have stopped short of a collision with plaintiff's car.

Being of the opinion that plaintiff is liable to Hodson on the reconventional demand for the actionable consequences of the accident, there remains only to determine the quantum of damages. Hodson requests that the case should not be remanded for this limited purpose as it is appropriate for this Court to fix the damages in cases where the successful injured litigant has argued and briefed the issue. Savoie v. Dupuy, 218 La. 717, 50 So.2d 817 is cited as authority for the contention.

It is true that our remand of the Savoie case to the Court of Appeal, for the purpose of fixing the damages to which the plaintiff was entitled, was founded on the observation that the matter of quantum had not been argued or briefed in this Court. However, since the decision in Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817, we have held that it is the better practice to remand cases here on writs of review to the Courts of Appeal for the decisions of issues which those courts have not had the opportunity, or have found it unnecessary, to consider in disposing of the controversy. This policy has been invariably applied in cases involving quantum of damages. Herget v. Saucier, 223 La. 938, 67 So.2d 543; Jackson v. Jones, 224 La. 403, 69 So.2d 729; Succession of Brower, 228 La. 785, 84 So.2d 191; Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 and Thornton v. F. Strauss & Son, Inc., 240 La. 455, 123 So. 2d 885.

The judgments of the district court and the Court of Appeal, insofar as they adversely affect the defendant, Raymond Hodson, Sr., are annulled and set aside and plaintiff's suit against that defendant is dismissed. It is further ordered that there be judgment in favor of said Hodson and against plaintiff on the reconventional demand for such sum as the Court of Appeal, Fourth Circuit, may find the facts of the case warrant and the matter is remanded to that Court for this purpose. All costs expended by Hodson are to be paid by plaintiff.

HAMITER, J., concurs in result.

HAMLIN, J., recused.