282 So.2d 474 (1973)
Alice Evelyn TITARD et al.
v.
LUMBERMEN'S MUTUAL CASUALTY COMPANY.
No. 52773.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
*475 Jacque B. Pucheu, Eunice, for plaintiffs-applicants.
Davidson, Meaux, Onebane & Donohoe, James J. Davidson, III, Lafayette, Lewis & Lewis, John M. Shaw, Opelousas, for defendant-respondent.
SANDERS, Chief Justice.
Robert N. Batton, Sr. and his wife, Alice Evelyn Titard (Batton) brought this action to recover damages for injuries sustained by Mrs. Batton in a fall at the home of John Edwards in Opelousas, Louisiana. The action was brought directly against Lumbermen's Mutual Casualty Company, Mr. Edward's home-liability carrier. In turn, Lumbermen's joined the City of Opelousas as a third party defendant.
The 27th Judicial District Court rejected the plaintiffs' demand, finding that Mr. Edwards was negligent in failing to warn his guests of areas of darkness created by a power failure, but that this failure to warn was not the proximate cause of the accident. The Third Circuit Court of Appeal affirmed at 264 So.2d 382, providing only these two paragraphs as an opinion:
"The plaintiffs herein appeal a district court judgment rejecting their demand for damages arising from a slip and fall incident at the home of defendant's insured.
"We have reviewed the evidence and the law and find that the result reached in the district court is correct. Accordingly, the judgment appealed is affirmed at plaintiffs-appellants' costs in both courts."
In Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969), this Court held:
"Although it is true that we grant writs only on questions of law, it should be remembered that the law cannot be *476 disassociated from facts, and its proper application in any given instance can only be ascertained by reference to the factual context in which it is sought to be applied. Court of Appeal opinions, therefore, must set forth the salient facts and the law as applied to those facts in order that this court may determine whether an error of law has been committed. La.Const. art. 7, § 11 (1921)."
Inasmuch as the assigned reasons for judgment in this case contain neither findings of fact nor a statement of the legal principles upon which the Court of Appeal reached its decision, we granted certiorari. 262 La. 1166, 266 So.2d 446 (1972). We now reverse.
The record reflects that Mrs. Batton was injured at the annual social gathering of the St. Landry Parish Bar Association. The event was held at Mr. Edward's home at his invitation and, for the most part, was confined to a pool-patio area which is surrounded by a seven foot high brick wall and lighted, not by electricity, but by flaming torches fueled by a combustible liquid.
Accompanied by Mrs. Ruth Leger, Mrs. Batton arrived at the party about 7 o'clock p. m. At about 11:00 p. m. an electric power failure occurred at the residence. Because of the torch illumination in the patio and the wall around it, neither Mrs. Batton nor her companion knew of the electric failure when they left about thirty minutes later.
Following the same route they had used on arrival, Mrs. Batton and Mrs. Leger walked out along a covered sidewalk which runs between the patio wall and the Edwards home. Some five feet from the patio gate, the walkway makes a 90 turn and goes under the carport. Both sides of the sidewalk in this area are bordered by low flower beds walled in by diagonally seated bricks. These bricks protrude 6 to 8 inches above the level of the sidewalk.
The women had taken only a few steps along this sidewalk when they were confronted with sudden and total darkness. Mrs. Batton placed her hand in Mrs. Leger's. Almost simultaneously, Mrs. Leger stumbled on the brick border and fell, pulling Mrs. Batton down with her by the hand-hold. As Mrs. Batton fell her face struck one of the protruding bricks causing serious injury.
The trial court, on the basis on these facts, concluded that Mr. Edwards was negligent:
"The only area where the Court can find negligence on the part of Mr. Edwards is after his discovery of the power failure. He noticed it; he attempted to correct the situation by checking his multi-break fuse box; he could find no trouble there; he called the personnel of the power supplier to come to his home, to check the power cut-off, which affected part of his premises. They came, checked, went back for a fuse, changed it for himthere being a lapse of about fifty (50) minutes between the discovery of the power failure and its repair. Mr. Edwards knew that he had many guests; the failure occurred about 11:15 P.M.; the front of his residence and the carport area were in darkness; many of his guests, he knew, had come into his patio area from that side of his home and would have to leave via the same route about the time of the power failure, in the dark. This he knew and at no time did he bother to tell any of his guests or warn them of dangers in the darkened area or do anything to illuminate the front of his home. And, in addition, the evidence shows, that there were in use, at the time, some twenty or more torch lights in the patio area which were nonpermanent fixtures and easily movable. These were not operated by electricity but by some can of combustible fluid. He could easily have moved one or two of these torch lights to the front of his residence, during the blackout, and this would have illuminated the darkened area, and provided safety and light for departing guests. Here, he failed completely *477 and this breach of duty could well have been a cause of plaintiff's injuries. She sustained her fall, in the darkened area, in the front of the Edwards home, during this black-out period, after she walked from the lighted patio area, to the darkened carport to sidewalk area. And apparently, her face struck one of the diagonal bricks providing a border around one of his flower beds. So the Court concludes there was fault or negligence on the part of Edwards, after the occurrence of the black-out."
We agree. Although a home owner is no insurer of the safety of his guests, he has the duty of warning them of hazards of which they are unaware or of taking other reasonable precautions to protect them from injury. The shrouding of the exit in darkness created such a hazard. As we held in Foggin v. General Guaranty Ins. Co., 250 La. 347, 195 So.2d 636 (1967) quoting Savell v. Foster, 149 So.2d 210 (2nd Cir. 1963):
"The owner, occupant or person in charge of property owes to an invitee.
In the duty of exercising reasonable or ordinary care for his safety and is liable for injury resulting from breach of such duty. This duty includes that of exercising reasonable care to keep the premises in a reasonably safe and suitable condition or of warning invitees....of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger."
In the trial court's view, however, the efficient cause of the accident was not this negligence but rather the holding on and pulling down by Mrs. Leger. This was, in the perspective of the original judgment, so unforeseeable as to break the chain of proximate cause.
The Court of Appeal affirmed, though it did not expressly approve this rationale.
Initially, we do not agree that it is unforeseeable for two persons to join hands while traversing a dark walkway to make their exit from residential premises. In so doing, they seek to aid each other in maintaining balance.
Moreover, the duty to warn of the electric failure or to provide available torch lighting is in a large measure directed against the risk of stumbling and falling. The scope of protection of the rule of law includes the risk of such an occurrence involving more than one person. Even a negligent intervention does not always break the chain of causation. As we observed in Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970), on rehearing:
"Where causation in fact is a breach of a duty imposed to protect from the particular risk involved and this breach is an act negligent per se, the mere fact that there is a later and intervening negligent actor who helped to create the particular risk involved will not absolve the first negligent actor from responsibility. This is not to say that intervening negligence can never supersede the original act of negligence so as to relieve the original actor from liability. Dixie Drive It Yourself [System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962)] recognized that the intervening negligence of another could relieve the original wrongdoer of liability, but it stated that such a theory should not be used to relieve all but the last wrongdoer from liability.
"This does not mean that every consequence of a negligent act of man requires him to respond in damages.... The keys for the solution of the issue of responsibility when there is more than one cause-in-fact of damages are (1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain consequences *478 which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults."
See also Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The foregoing holding is consistent with the generally accepted views as to legal cause. As the Restatement (Second) of Torts (1965) § 442A provides:
"Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause."
The denial of causality in the case before us cannot be squared with these principles. Accordingly, the judgment appealed from is reversed insofar as the liability of Lumbermen's is concerned.
Since Lumbermen's, the third party plaintiff, took no appeal as to the third party demand against the City of Opelousas, the third party demand is not before this Court. See McCoy v. Pacific Coast Fire Insurance Co., 248 La. 389, 178 So.2d 761 (1965).
In keeping with the practice of this Court, the action shall be remanded to the Third Circuit Court of Appeal to fix damages. See Felt v. Price, 240 La. 966, 126 So.2d 330 (1961).
For the reasons assigned, the judgment of the Court of Appeal is reversed and judgment is rendered in favor of plaintiffs, Robert Norton Batton, Sr., and Alice Evelyn Titard against Lumbermen's Mutual Casualty Company, defendant, in such sums as may hereafter be fixed. The case is remanded to the Court of Appeal, Third Circuit, for the assessment of damages.
It is further ordered, adjudged, and decreed that all costs be assessed against the defendant, Lumbermen's Mutual Casualty Company.
SUMMERS and DIXON, JJ., concur.
MARCUS, J., dissents with reasons.
MARCUS, Justice (dissenting).
I dissent.
I am of the view that plaintiff was clearly contributorily negligent, which negligence was a proximate cause of the accident. See Curet v. Hiern, 95 So.2d 699 (La.App. 1957); and Briscoe v. Bailey, 74 So.2d 770 (La.App.1954).